TRIBBLE *et al. vs.* ANDERSON.

1. The homestead right in land to which the debtor has the legal title is, in equity as well as at law, superior to any right of a creditor whose claim is not within one of the exceptions embraced in the constitution. Hence, even in equity, to establish or assert the homestead right in opposition to a deed void for usury, neither payment nor tender of the debt which the deed was made to secure is necessary.

63  31
89   8

63  31
96  190

63  31
102  768

63  31
106  602

63  31
f107 538

63  31
112  235
a112 236

63  31
125  840

2. An infected debt closed up whilst the usury laws stood repealed, and then reopened after they were restored, is still infected until purged. But if purged when reopened, an instrument then made renouncing title to land previously conveyed by a usurious deed, and recognizing title thereto in the creditor, and providing for a sale by him, will be upheld as a conveyance for security of the debt.

3. Homestead is favored by the law, and usury is odious to the law. For reasons of public policy, no waiver of homestead can be effectual where the consideration has any taint of usury.

4. Tenancy cannot arise between debtor and creditor by a contract for rent, if the title on which the so-called tenancy rests is void for usury. In such case there is no estoppel upon the debtor to deny that the creditor is his landlord. The like rule holds as to a hiring of personalty.

5. To add to the principal interest thereon at an agreed lawful rate and give a written obligation for the aggregate, without expressing the rate itself, is a sufficient compliance with a statute which tolerates a limited conventional rate of interest on condition of the contract therefor being in writing.

6. Though a judicial sale of personal property be void, if the owner, with full knowledge of the facts, hires the property from the purchaser, no usury or other illegal element being in the transaction, the contract of hiring is obligatory, and the consequences ensue which attend ordinary cases of bailment.

7. Though in a proceeding to secure homestead, questions are made which are not appropriate to an ordinary proceeding for the like object, yet, if the parties agree specially to try them, and conduct the trial accordingly, the court should not in the end charge the jury in a way to leave the main controversy still open.

8. A pending trial should be concluded before members of the jury are charged with another case. Hence, it is improper to withdraw a case after the evidence is all in, proceed to other business with some of the same jury, and afterwards resume and finish.

Equity. Ejectment. Deed. Homestead. Usury. Landlord and tenant. Estoppel. Practice in the Superior Court. Jury. Charge of Court. Before Judge BARTLETT. Jones Superior Court. October Term, 1878.

On December 4, 1876, Eliza M. Tribble, for herself and minor children, filed her application in the ordinary's office for a homestead in certain land and an exemption of personalty.

To the granting of said homestead and exemption Anderson filed exceptions on the following grounds, to wit:

1. The two mules mentioned in said schedule belonged to him, and could not be set apart as an exemption of personalty to said applicant — and said crop to the extent of $64.98, because S. T. Tribble, the husband of applicant, is indebted to him in that amount for rent of the land on which, and for the year, said crop was made.

2. The land described in said petition belongs to said Anderson, said Tribble, with the consent of his wife, having conveyed the same to him, by absolute deed, on the 10th day of January, 1873, for a valuable consideration, to wit: to secure a debt, etc. On the 10th day of January, 1876, said Tribble surrendered possession of said land to said Anderson, and rented the same from him and has held the same as his tenant ever since. The money advanced by him was for the removal of an incumbrance to which the homestead was subject.

3. The said Tribble, on the 10th day of January, 1876, for a valuable consideration, waived, renounced, and gave up for himself and family, all right and claim to a homestead in said Anderson's favor.

This case was, by consent of parties, put on appeal to the superior court.

Anderson, in January, 1877, after the same was thus disposed of, sued out a possessory warrant for the recovery of said mules, and the officer seized them and turned them over to him, Tribble being unable to give bond.

On the 14th day of December, 1876, Anderson sued out a distress warrant against Tribble for the sum of $64.98, and had the same levied on 125 bushels of corn, 1,000 pounds of fodder, 50 bushels cotton seed, one two-horse wagon and one set of harness. On the 3d day of January, 1877, after said application for homestead was put on the appeal by consent, he sued out a warrant to dispossess said Tribble of said land. Whilst all of said cases were pending in the county court, on the 10th day of January, 1877, counsel for Anderson, Tribble, and his wife, entered into the following agreement: "In order to shorten said litigation and

to terminate the same as speedily as possible, it is agreed that all of said cases be consolidated, and put on the appeal to the April term, 1877, of Jones superior court. The parties in the meantime to file such pleadings as will make and determine all the issues on the merits."

At the April term, 1877, of said court, the parties, by the approval of the court, entered into a second agreement to the effect following:

That Anderson should file his writ of ejectment to the present term of the court against S. T. Tribble for the recovery of said land. Tribble should acknowledge service and waive the twenty days' notice. Mrs. Tribble should file her bill returnable to the same term, enjoining said suits, and setting up her right to homestead, exemption, etc.

In pursuance of this last agreement, Anderson filed his suit for the recovery of said land. Mrs. Tribble, for herself and children, filed her bill, in which she alleged substantially the following facts: She is the wife of S. T. Tribble, and the mother of six minor children. During the years 1871 and 1872 her husband became indebted to Anderson $480.00, or some such sum, and by charging usurious and illegal rates of interest, never less than fifteen per cent., so manipulated said sum, that on the 10th day of January, 1873, it amounted to six hundred and thirty-five dollars and three cents; on said day Anderson procured from Tribble a note for said usurious debt, and at the same time, to secure said note, procured a deed, absolute on its face, to the land out of which she had applied for a homestead. She does not of her own knowledge know under what circumstances her husband signed said deed, but she is informed and believes he was intoxicated, and did not understand his legal rights. Anderson and her husband brought the deed to her house, and the latter, who was drinking at the time, forced her to sign. There was no officer present to witness her signature, and the name of Middlebrooks attached thereto was put there afterwards, without her knowledge. Said deed was given only as a

security for debt and never intended to pass title. It was a part of said usurious contract, and void for all purposes as title. Anderson, under what authority complainant does not know, had said land advertised in the Macon *Telegraph and Messenger* for sale on the first Tuesday in December, 1876, in the town of Clinton. His influence over her husband was so great, he was afraid to disclose this fact to her, and she only discovered it by seeing the advertisement in the paper. He was so completely under the influence of Anderson he was afraid to assert his legal rights, and seeing that she and her children were about to be deprived of their home, she filed her application for homestead, and gave notice on the day of sale of the pendency of said application. Anderson proceeded to sell said property and became the purchaser himself.

Her application (Anderson having filed objections to the same) was put on the appeal by consent. After said case was thus disposed of, complainant hoped she would no longer be harrassed by said Anderson; but he well knowing her poverty, and that she was unable to give bond and security, sued out the possessory warrant, warrant to dispossess, and distress warrant, as above set out, hoping thereby to crush complainant and her family. The note purporting to be for rent, on which said distress warrant was based, was for usurious interest on said debt, and not for rent. Anderson, under said illegal distress warrant, had all the produce of the family levied on and locked up, so that in the midst of a most terrible winter they were for a time deprived of their daily food—all of which was done by him for the purpose of harrassing complainant and her family, and driving them from said land, before their rights could be adjudicated under said application for homestead. Complainant was about to file her bill in equity to enjoin said proceedings to oust herself and family, when it was agreed that said matters should be suspended until the rights of all parties could be adjudicated under said application for homestead, etc.

After waiving discovery, complainant prayed for an injunction restraining said writ of ejectment until her rights could be adjudicated under the application for homestead, and for general relief.

Anderson answered denying all the material allegations, and by way of cross-bill charging that complainant and her husband were insolvent; that they were protracting said litigation for the purpose of keeping his land; that they were committing waste, etc., and praying for an injunction, and a receiver to take possession of said land, collect the rents, etc. The cross-bill was answered.

Whereupon it was agreed by counsel for complainant and defendant, that the court should appoint J. J. Glover receiver to take possession of said land, and that he should rent the same yearly to S. T. Tribble for 750 pounds of cotton, and that he should hold the proceeds to abide the termination of the litigation.

S. T. Tribble filed the following pleas to the action of ejectment:

1. The general issue.

2. The deed upon which Anderson relies for recovery, to-wit, the deed of January 10, 1873, is infected with usury, is part of a usurious contract, and made to secure a usurious debt, and is therefore void, and conveyed no title to him, for that said deed purports to be given for the consideration of $635.03, which amount arose in the following manner: Defendant owed plaintiff $204.00, secured by bill of sale to mules; said sum was due the 25th of December, 1872, and was dated January 4th, 1872. He also owed plaintiff $21.58. On the 25th day of December, 1872, these debts were settled by defendant's giving to plaintiff a deed to one hundred acres of the land in dispute, to secure $307.38, which sum arose thus: Plaintiff charged defendant fifteen per cent. on the $204.00 for twelve months, to which was added the sum of $25.58, making $256.18, but, as this amount was to be paid twelve months thereafter, Anderson added thereto twenty per cent., making $307.38.

Afterwards plaintiff bought up a debt owed by defendant to one Ben. Hammond, for $270.00. He added this sum to the $307.38, making $577.38, upon which he charged ten per cent., making $635.03, or a sum very nearly that amount. Defendant says that said Anderson, at the time of taking said deed, also took a note from him for $762.68, which sum was reached by adding twenty per cent. to the $635.03.

Upon the trial of the issues thus formed, complainant introduced a deed from Thurmond to her husband bearing date December 29th, 1866, conveying to him the land in dispute. It was admitted that the land was in possession of Tribble at the time of the application for a homestead, and when the action therefor was brought by Anderson. Also, that Glover had been appointed receiver to take possession thereof, and that Tribble had rented from him for the year 1878.

Complainant here closed, and Anderson, the defendant to the bill, and plaintiff in ejectment, introduced the following evidence :

1. An absolute deed of conveyance from Tribble to him covering the land in dispute, made thé 10th day of January, 1873, in consideration of $635.03, said deed witnessed by N. S. Glover, M. V. Tiner, and Thos. G. Middlebrooks, J. P., and also signed by Mrs. E. M. Tribble. At the bottom thereof was the following entry :

" GEORGIA—Jones County.

" In a private conversation with Mrs. E. M. Tribble, at the time she entered her signature to this deed, she said that she willingly signed the same and cheerfully approved of what her husband had done. She was fully aware of his legal rights.

(Signed) T. G. MIDDLEBROOKS, J. P."

2. An instrument of which the following is a copy :

" GEORGIA—Jones County.

This agrement made and entered into this day between S. M. Anderson, of the county of Jones, of the first part, and S. T. Tribble, of the same place of the other part, witnesseth that the said S. T. Tribble, in consideration of eight hundred and seventy-eight and $\frac{23}{100}$ dollars, which the said party of the second part acknowledges to be due and

Tribble *et al. vs.* Anderson.

owing the said party of the first part, and for which he has heretofore made to said party of the first part an absolute deed of conveyance to two lots or parcels of land, more particularly set forth and described in said deed ; and for and in consideration of the rent of said land for the year 1876, hereby waives, renounces, and gives up for himself, his heirs, executors, and administrators, all right and title to the same in any manner, by homestead, exemption or otherwise, and consents, by these presents, upon the failure to pay the said Anderson, the above-mentioned sum on the first day of December, 1876, the said Anderson shall have, by this agreement, the right and authority, without objection by the said party of the second part, or by operation of law to the contrary, to advertise and put up for sale before the court-house door in the town of Clinton, on the first Tuesday in December, 1876, all of said land to the highest bidder.   And the said Anderson agrees on his part to make said land bring the sum of eight hundred and seventy-eight and $\frac{23}{100}$ dollars, or so much as will discharge the amount due by the said party of the second part—and further agrees and binds himself that should said land be sold for a sum greater than the amount due the said party of the first part, said overplus shall be paid to the party of the second part.   Anderson further agrees that should said Tribble pay said sum of $878.23 at time and place above specified, to make to said Tribble a good and sufficient deed of conveyance to said land.

In default of either party to carry out his part of this agreement, then each binds himself in the sum of five hundred dollars, to be recovered in an action for breach of contract.

(Signed) $\begin{cases} \text{S. M ANDERSON,} \\ \text{S. T. TRIBBLE.} \end{cases}$

Signed the 10th day of January, $\Big\}$
1876, in presence of

R. V. HARDEMAN,
ROLAND ROSS,
Clerk, S. C. J. C."

3. Bond for title from Anderson to Tribble, bearing date of the 5th day of February, 1874, agreeing to reconvey said lands to him upon the payment of $774.93, by 25th of December after date.

4. Note given by S. T. Tribble to Anderson for the hire of two mules, bearing date the 10th day of January, 1876, for $35.00.

5. Note given by Tribble to Anderson for rent of land for the sum of $80.50, bearing date the 10th day of January, 1876.

6. Note given by Tribble to Anderson for rent of land

for 1,500 pounds of lint cotton, secured by mortgage on two mules in dispute, bearing date the 25th of December, 1874.

7. Bill of sale from Wm. Jackson, constable, to Anderson, to the two mules in dispute, bearing date the 19th day of June, 1875, and showing on its face that said constable sold said mules under a mortgage *fi. fa.* issued by a justice of the peace.

8. Note from Tribble to Anderson bearing date the 5th day of February, 1874. Consideration, $774.93, due 25th day of December after date.

9. Execution docket of Jones superior court, showing an execution in favor of U. C. Butler, administrator, etc., *vs.* H. C. Tribble, and S. T. Tribble, April term, 1871, for $800.00 principal, $68.34 interest, and costs of suit.

10. S. M. Anderson sworn in his own behalf, says: The deed to me of January 10th, 1873, was given by Tribble to secure me for $635.03 loaned him. He owed me that amount in the following way: Ben. Hammond held a deed to one hundred acres of his land. I took the Hammond debt. I paid Hammond not less than $250.00 nor more than $300.00, and Tribble gave me a deed to one hundred acres of his land to secure me. Never charged Tribble any but legal interest on this land Mr. Chas. Glover also held a deed to a part of the land, and I paid him something over $800.00 about three or four hundred of which was for S. T. Tribble. I paid it on an execution held by Mr. Glover *vs.* H. C. and S. T. Tribble. The Hammond and the Glover debts, and some medical and store accounts (though I am not certain they were added in) make up the $635.03. Tribble signed the deed in the presence of N. S. Glover, and Mrs. Tribble signed at her house. I and Mr. Tribble sat on the fence while Middlebrooks and Tiner went into the house, procuring the signature of Mrs. Tribble. I used no force or threat in getting her consent, nor knew of any being used. Tribble gave me his note the day I gave him a bond for title, and in twelve months or thereabout he gave another note for $774.93, and afterwards, on

the 25th of December, 1874, he failing to pay the note, it was canceled by mutual agreement, the bond for title delivered up, and he rented the land from me for 1875, and has held it ever since as my tenant, and has paid part of the rent for that year. On the 10th of January, 1876, Tribble got Hardeman to make a settlement of our matters, saying he wanted another chance to pay me. Hardeman was his lawyer, and after examining the papers, and making a calculation, he drew up the agreement of January 10th, 1876. My claims were reduced in amount. Tribble failed to carry out the agreement and I advertised the land in the Macon paper and sold it in Clinton on the first Tuesday in December, 1876, and purchased it for $878.23, as I offered to do. Mrs. Tribble had filed her application for homestead in these lands. Do not think Tribble was present on the day of sale. Mr. Tyner gave notice before the sale of Mrs. Tribble's application for homestead. I never charged Tribble any usury on the land debt. Never charged him usury on anything. Only legal interest. There is no usury in the $635.03. After Mrs. Tribble signed the deed, we went back to the mill, and I paid Mr. Glover over $800.00 on the Butler execution, about three or four hundred of which was for S. T. Tribble. Glover gave me the deed which he held to Tribble's land and I turned it over to Tribble. When he failed to pay the note of January 10th, 1873, he took a new bond for title in February, 1874, and gave a new note; and when he failed to pay this last note, he delivered up the new bond, and I the note. He rented the land from me as his landlord in 1875, and also in 1876. He always recognized me as his landlord until this suit began. I considered the agreement of 1876 as a full and final settlement of the matters between us. The debt for the mules was not mentioned in the deed. I bought the mules at a constable's sale. Mr. Head had a mortgage foreclosed against them before Mr. Childs, a justice of the peace, and Mr. Jackson, the constable, sold them. I first loaned the mules to him, and then rented them to him.

He had them rented at the time of the application for homestead. He never claimed them until the application for exemption was made.' Am certain the Glover and Hammond debts went into the $635.03. Can't say what amount the Hammond debt was. Would not say it was less than $250.00. Took up the Hammond debt in November 1872. Am certain as to the time. Tribble gave me a deed to one hundred acres of land to secure me. Never charged Tribble any usury thereon; the legal per cent. in 1872, I think, was ten or twelve per cent. (The witness was here shown the deed and bond to one hundred acres of land showing consideration of $307.38, dated December 25th, 1872, and recognized it as true.) This is the deed and bond given by Tribble to secure me in taking up the Hammond debt. I was mistaken as to the time of its execution. Am certain it was given to secure the Hammond debt and some little store and medical accounts, about $21.58, but am not certain this amount went in. (Witness was then shown a note from himself to Tribble, dated December 28th, 1872). I wrote the note. I think the way it happened was that the papers had not been exchanged. Am certain the deed had been taken up, but the papers had not been exchanged. Tribble also owed me a debt in 1872, and pledged his mules and mare to secure it—but the debt did not go into the $307.38 deed. I don't think I charged Tribble any but legal interest on this mule debt. Witness was here shown a bill of sale to the mules due December 25th, 1872, for $204.00, and said it is correct—that Tribble signed it. I charged him fifteen per cent. on the debt. The mule debt has been settled, but I don't know how or when. We had a great many transactions, and I don't know how it was settled. Tribble never paid me any money on it. It did not go into the $635.03, or in the notes afterward taken by me. Tribble owed me some medical and store accounts in 1872, about $21.58. Did not charge Tribble any usury on the account. Witness was here shown a medical and store account and said they were correct, and

marked settled December 25th, 1872, in my handwriting. I charged Tribble ten per cent. on one of these open accounts. The deed of January 10th, 1873, was given to secure a debt of $635.03 I took a note for that amount payable one day or twelve months after date, the note will show. Tribble has the note. We added the Hammond and Glover debts together, and perhaps some small accounts, though I am not certain of this, and this made $635.03. Don't know that I charged any interest to make the $635.03. If I did I charged ten per cent. I took a note for the amount due; the note will show. Here the witness was shown a note dated January 10th, 1872, payable twelve months after date, for $762.48, and said, it is the note made the day the deed was executed. Don't recollect what claims made the difference between $635.03 and the $762.48. It was not interest. I never charged Tribble 20 per cent. on anything. Nor did I take the mule debt of $204.00 and add it to the store account, and then add it to the Hammond debt, to make the $762.48.

11. T. G. Middlebrooks testified as follows: I attested the signature of S. T. Tribble and his wife to a deed given by Tribble to Anderson on the 10th day of January, 1873. M. V. Tiner and myself went in the house with the deed to Mrs. Tribble, which I explained to her, and she signed it willingly. Anderson and Mr. Tribble were out in the yard; the certificate at the bottom of the deed was put there by me some time after it was made, but I had no conversation with her subsequent to the signing of the deed. Mr. Tribble, Anderson, Tiner, and myself then went to Glover's Mill, and Tribble signed there.

12. M. V. Tiner testified as follows: I do not recollect going to Mr. Tribble's house to get his wife to sign a deed given by him to Anderson, in 1873; to the best of my recollection I did not go, and she did not sign in my presence.

13. N. S. Glover testified as follows: Mrs. Tribble did not sign the deed given by her husband to Anderson in

1873, in my presence. In 1870, or thereabout, I took up, a judgment which was hanging over Clark Tribble and S.. T. Tribble, for something over $800.00. As additional. security S. T. Tribble gave me a deed to 225 acres of land.. After I had held this judgment debt one or two years. (I am pretty certain I did not hold it longer than one, year—may possibly have held it two years, but don't think I did), Anderson, at the instance of Clark Tribble, paid it off. S. T. Tribble had nothing to do with the making of the settlement, nor was he present when it was made; about the time the settlement closed S. T. Tribble came to where we were at the mill—but he had nothing to do with; it. The judgment I held, and which Anderson paid off,. was in favor of Butler, administrator, against H. C. & S. T. Tribble. The deed from S. T. Tribble was held as col-. lateral security. Anderson paid me the money on the judg-. ment in full. When he paid me I gave up all the papers, the deed to Tribble's land with them. S. T. Tribble never paid me a dollar on the debt. I signed the deed of January 10, 1873, as a witness. Anderson paid me on that day about $800.00 for an execution against H. C. & S. T. Tribble. The deed of 1870 from Tribble to me was an-. other matter entirely, and was given as collateral for S. T. Tribble.

14. R. V. Hardeman testified as follows: On January 10, 1873, I represented Tribble in a settlement between. himself and Anderson. After looking into their matters. and making a calculation, an amount was agreed upon, and the contract of January 10, 1876, entered into. I think I saved Tribble about $150.00 or $200.00. Thought I was doing well for him, and he seemed pleased with the settlement. In this settlement ten per cent. interest was charged by Anderson; the $878.23, the amount expressed in the contract, was the amount agreed upon. The memorandum at the bottom of the $774.00 note does not embrace all that was taken into account. It was put there simply for my guidance. Tribble was satisfied with the settlement,

4

and expressed himself so.    In this settlement Anderson made a reduction both in interest and amount.    The agreement was given as a full and final settlement of all matters in dispute between them.

S. T. Tribble, in his own behalf, and for complainant in the bill, testified to the facts set forth in his plea to the action for the land, and corroborated the evidence of Glover.    He also stated that the notes introduced by Anderson were not given for rent, but for the interest on the amount witness was indebted to him, though they were made *as for rent*.    That when Mrs. Tribble's signature was procured to the deed, no one was present but Anderson and witness; that when he first presented the deed she refused to sign it and left the room; that he followed her out to the kitchen and told her that he would be damned if she did not have to sign it; that both transactions, the signing of the deed on January 10, 1873, and the settlement of the execution by Anderson for Clark Tribble, took place at Glover's mill; that witness was drinking. That on December 25, 1874, he gave up Anderson's bond for title, which had been given in renewal of the bond of 1873, and rented the land from him for 1875; that he paid a part of the rent for the latter year in cotton.

Some additional documentary evidence was introduced which has been so fully referred to in the pleadings and other testimony that it is deemed immaterial here.

The jury found for the defendant in the bill, and for the plaintiff in the action for land.    Whereupon the chancellor decreed that the application for homestead and exemption be denied; that the injunction against the further prosecution by Anderson of the distress warrant, of the possessory warrant for the two mules, and the warrant to dispossess a tenant holding over, be dissolved; that Anderson recover the premises in dispute, the mules and the rent.

Mrs. Tribble and her husband moved for a new trial upon the following amongst numerous other grounds :

1. Because the verdict in each of said cases is contrary to law, equity, evidence, and good conscience.

2. Because the court erred in withdrawing the case from the jury from the hour of eleven and a-half o'clock on Wednesday till Thursday morning, the circumstances being as follows: After the counsel for complainants in the bill and defendant in ejectment had closed the argument, the court said "that it would withdraw the case from the jury till the following morning, in order to examine the requests to charge and to prepare his own charge," stating that it was often done by him in his own circuit. After thus expressing himself, the court then, in the presence and hearing of the jury, said to the counsel interrogatively: "You have no objection?" To which the counsel responded "No." The case was then withdrawn from the jury. After usual instructions to them they dispersed; the court adjourned, and in the evening of the same day a portion of said jury were impaneled to try another case, which they did, finding the verdict that evening.

3. Because the verdict of the jury is contrary to the following charge of the court: "Notes given as annual percentage on amounts loaned, though expressed as rent, are not rent but interest. If the original transaction was usurious, all securities given in renewal thereof are infected with usury, however varied in form and amount."

4. Because the verdict of the jury is contrary to the following charge of the court: "That the case of S. T. Tribble, according to the agreement made by counsel, has nothing to do with the case of E. M. Tribble and her children in their application for a homestead, and the jury will find a verdict in each case—that is, a verdict for or against the homestead, and a verdict for plaintiff or defendant in the ejectment suit. The two cases stand separately, each upon its pleadings and evidence, and are held together by consent to shorten litigation."

5. Because the court erred in this: When requested to charge the jury as follows—" That the legal rate of interest

from 1871 to February 19th, 1873, was seven per cent. when the contract was silent, and whenever the parties in any written contract agreed to pay not more than ten per cent., it was binding, but that in no wise was more than ten per cent. legal; and if the jury believed from the evidence that Anderson charged Tribble during the year 1872 more than seven per cent. when the contract was silent as to the rate, and more than ten per cent. if agreed to in writing, upon any money loaned by him to Tribble, it was usury. And if the jury believed from the evidence that said money, or any part thereof, loaned and upon which these illegal rates of interest were charged by Anderson, was incorporated in the $635.03, the consideration of the deed under which Anderson seeks to recover, or in the contract of which the deed was a part, or the note the deed was given to secure, then the deed is infected with usury, is void as title, and you will find for the defendant in ejectment." After so charging, the court added to said request the following qualification: " Unless the jury shall find there are facts in this case to take it out of the rule, as laid down hereafter."

6. Because the court erred in this: When requested by counsel to charge the jury as follows—" That Mrs. Tribble and her children are entitled to a homestead and exemption in and to any property of her husband, or to which her husband has title, and if the jury believe from the evidence that the deed is infected with usury, then the deed is void, the title is still in Tribble, and it will be your duty to grant a homestead out of the lands." After so charging, the court added the following qualification : " But she having come into a court of equity she must do equity, and although the deed may be infected with usury, she must pay or tender the principal and the legal rate of interest before she will be heard."

7. Because the court erred in this: When requested to charge as follows—" That if the defendant in ejectment sets up in this case, as a defense, that the deed was given to secure a debt, he would be obliged to tender or pay the debt he

admits it was given to secure, but the defense being that the deed is usurious and therefore absolutely void, it is a purely legal defense, and no tender is required." After so charging the court added thereto the following : " This is true, unless there be such facts as take the case out of the rule."

8. Because the court erred in charging the jury as follows: " That if at any time Tribble has, for himself and family, waived his and their right of homestead in the land in dispute, then complainants are not entitled to a homestead, though the deed may have been given to secure a debt affected with usury, and they must find for defendant."

9. Because the court erred in charging as follows : " That whoever seeks to have equity interfere in their behalf must do equity, and in this proceeding complainants having filed their bill on the equity side of the court and attacked respondent's title for usury, then before the jury can declare the deed void for usury, and they obtain a homestead in the land conveyed in the deed, respondent must be paid, or have tendered him, the amount due him by defendant, if any be due, and unless this has been done, they must refuse complainants' homestead and find for respondent."

10. Because the court erred in charging as follows : " But if the jury should find from the evidence that subsequent to the execution of said usurious deed, the parties, Anderson and Tribble, met and entered into an accord and satisfaction, and that in that subsequent agreement the matters in dispute between the parties were satisfied and settled, and by such subsequent agreement Tribble delivered the bond for title he held from Anderson to him, and renounced his title to said land, and renounced his right of homestead, and that subsequent agreement was purged of all usury, and such agreement of accord and satisfaction has been satisfied by the parties, and that Tribble has rented the land from Anderson, and attorned to Anderson as his tenant, Tribble cannot dispute the title of his landlord while he is in possession of the land, and both Tribble and those

Tribble *et al.. vs.* Anderson.

claiming under him are estopped, and the jury should, by their verdict, refuse a homestead to the wife in the lands, and find the premises in dispute for Anderson, with such mesne profits as they may find authorized by the evidence."

11. Because the court erred in refusing to charge as follows : " That plaintiff in ejectment, Anderson, relies in this case for recovery upon a deed dated 10th January, 1873, and he must recover upon that title or not at all; and although there may have been a purging of usury as to the debt subsequently, still, if the deed upon which recovery is sought is still unpurged of usury, he cannot recover the lands in dispute. In order for plaintiff in ejectment to recover upon the deed, the deed itself must be purged, if the jury believe from the evidence that the deed was usurious."

12. Because the court refused to charge as follows : " That a justice of the peace has no right to foreclose a mortgage on personalty, or to issue a *fi. fa.* for $100 or more. Nor has a constable authority to sell property under a mortgage *fi. fa.*, and if the facts show that Anderson bought the mules under such circumstances, he got no title ; and a note given for hire, though for interest, is only *prima facie* evidence of title, and may be explained. Tribble could not by any act of his make such a sale valid."

The motion was overruled, and Mrs. Tribble and her husband excepted.

BERNER & TURNER, for plaintiffs in error, cited, on withdrawal of case from jury, 37 *Ga.*, 334 ; 61 *Ib.*, 635. On effect of usury, Code of 1863, §2024 ; 54 *Ga.*, 554 ; 55 *Ib.*, 412, 691 ; 56 *Ib.*, 33 ; Code of 1868, §2023 ; acts of 1871–2, p. 75 ; acts of 1873, p. 52 ; acts of 1875, p. 105. On qualification of requests to charge, and on method of charging them, 44 *Ga.*, 46 ; 57 *Ib.*, 284, 362 ; 40 *Ib.*, 291. On waiver of homestead, 39 *Ga.*, 386 ; 59 *Ib.*, 836. No pleadings to authorize charge on necessity of tender, 54 *Ga.*, 554 ; 57 *Ib.*, 81 ; 58 *Ib.*, 596 ; Tyler on Usury, 447 ; 18

Ark., 369; 32 Ala., 456. On effect of instrument of 1876, 60 *Ga.*, 639; 1 *Ib.*, 392; 56 *Ib.*, 33; 54 *Ib.*, 15; 59 *Ib.*, 584; 18 *Ib.*, 697; 20 *Ib.*, 429; 25 *Ib.*, 477; Tyler on Usury, 396; Taylor's Land. and Ten., 153.

C. L. BARTLETT; R. V. HARDEMAN, for defendant, cited, on settlement of usury, 57 *Ga.*, 95; 61 *Ib.*, 38; 30 *Ib.*, 630. On estoppel by reason of relation of landlord and tenant, VIII U. S. Dig. 539 *et seq.*; 61 *Ga.*, 322; 59 *Ib.*, 224. If no usury, title passed and defeated homestead whether deed was voluntarily executed or not, 54 *Ga.*, 45; 55 *Ib.*, 650; 57 *Ib.*, 601; 58 *Ib.*, 457; *Allen vs. Frost*, present term. Tender of amount legally due necessary, 62 *Ga.*, 86; 10 *Ib.*, 389; 9 *Ib.*, 137; 4 *Ib.*, 239; 1 Story's Eq., 64, 301; Tyler on Usury, 435. On accord and satisfaction of usury, Tyler on Usury, 93 *et seq.*, 112 *et seq.*, 207, 208, 393, 394, 402, 403; 4 N. Y., 225; 1 Black, 115; 4 Brown's Ch., 28; 1 Vesey Jr., 527; 10 Johns., 185; 8 Tenn., 390; Code, §2878; 1 John. Ch., 158; 7 Paige, 615, 641; Tyler on Usury, 212; 2 Stewart, 426; 3 Call, (Va.) 211; 1 John. Cases, 158.

BLECKLEY, Justice.

Mrs. Tribble applied for homestead and exemption. Anderson resisted, claiming title to the land and the mules, and a lien for rent on the crop, and also setting up a waiver of homestead by Tribble, the husband of the applicant. On these issues, the case came from the ordinary to the superior court, the parties appealing by consent. Anderson then obtained possession of the mules by a possessory warrant, Tribble proving unable to give bond and security. He also sued out a distress warrant against Tribble as his tenant, and had the same levied upon some corn, fodder, cotton-seed, a wagon and a set of harness; and he sued out a warrant to dispossess Tribble of the land as a tenant holding over. By consent, all these cases were consolidated on

the appeal docket in the superior court, and it was agreed that such pleadings should be filed as would raise all the issues, and lead to their determination on the merits.   The pleadings finally used were a declaration in ejectment by Anderson against Tribble to recover the land ; pleas general and special thereto by Tribble ; a bill in equity by Mrs. Tribble (on her own behalf and for her minor children) against Anderson, setting up the homestead and exemption right, praying for general relief, and specially for an injunction to restrain the action of ejectment, etc.; an answer by Anderson, extending into a cross-bill, and praying for an injunction, the appointment of a receiver, etc.; and an answer by Mrs. Tribble to the cross-bill.   These pleadings constituted what may be called the hopper of the consolidated case, and the whole litigation came on for trial together.   Anderson claimed title to the land, the right to dispossess Tribble as his tenant holding over, a certain sum for rent in arrears, title to the mules, and a right to their present possession.   Mrs. Tribble claimed a homestead in the land as the property of her husband, together with the mules, the crop and other personalty as exempt, her whole claim being under the constitution of 1868, and the statutes to carry the same into effect.   Tribble claimed nothing for himself, but acted apparently in close alliance and sympathy with his wife, giving her all the aid and comfort in his power.   He defended the action of ejectment on the ground of usury, and Mrs. Tribble set up the same usury in her bill.   It was not disputed that Anderson held an absolute deed from Tribble, dated January 10, 1873, conveying the land, which deed was made as security for a debt ; nor was it disputed that he also held the instrument dated January 10, 1876, copied in the report, in which Tribble " waives, renounces and gives up for himself, his heirs, executors and administrators, all right and title to the same, (the land) in any manner, by homestead, exemption or otherwise," and in which he consented to a sale of the land by Anderson in the event of his failure to pay a

stipulated amount, his then acknowledged debt to the latter, by the first day of the ensuing December. The deed was attacked as tainted with usury in the debt which it was made to secure, and it was insisted that the usury was not purged out when the subsequent instrument was executed. In the interval between these two muniments of title to-wit: on the 5th of February, 1874, when there was no usury law in operation, Tribble, it appears, renewed his note for the original debt, and Anderson gave him a bond for titles, stipulating for a reconveyance of the land on the payment of this note by the 25th of December, 1874, the time of its maturity. Tribble failed to pay, and the note was canceled and the bond for titles surrendered. This occurred before the re-establishment of the usury laws. Tribble then rented the land from Anderson for the year 1875, and the latter exhibits a note purporting to be for rent, bearing date December 25th, 1874, and secured by a mortgage on the two mules. He also exhibits another note purporting to be for rent, dated January 10th, 1876. Tribble contends that neither of these notes was in fact given for rent, but that both were given for the agreed interest on the debt. Anderson seems to hold that there was no debt after the note was canceled and the bond for titles surrendered, on December 25th, 1874, until the debt was re-instated by the agreement of January 10th, 1876. He denies that the debt in question is or ever was infected with usury. We thus see the state of the controversy as to the land: Anderson urges the deed of January, 1873, the settlement of December, 1874, the doctrine of estoppel by tenancy under him, and the final instrument of 1876 ; under which last he proceeded to sell after the homestead was applied for, and being unable to get a higher bid than he had stipulated with Tribble to make, he was himself the purchaser. On the other hand, Tribble and wife say that the deed was and is void for usury, that the debt has subsisted all the while, usury being added to usury, and no complete purging made ; that though there was the form of

renting there was no real tenancy, the rent notes being a sham to conceal usury, etc. The controversy as to the mules (putting out of view the mortgage upon them, which seems not now to be urged, and the bill of sale of 1872, which is conceded to be no longer operative) is simply this: The mules were purchased by Anderson in June, 1875, at constable's sale, made under a mortgage *fi. fa.* issued by a justice of the peace. Anderson contends that he hired the mules to Tribble, and exhibits the latter's note for hire, dated January 10, 1876. It is replied that the constable's sale was void, a justice of the peace having no power to issue a mortgage *fi. fa.*, and therefore that Tribble hired his own property, whence, it is said, the contract of hiring is a nullity. It is suggested, also, that at the bottom there was no actual hiring of the mules, but that the note given nominally for hire was in truth given for usurious interest on money.

1. It will be seen from the foregoing summary that the case tried belonged to the composite order; it was partly a legal growth and partly a concerted manufacture; it stood with one foot in equity and the other in the law; it was compound as well as consolidated; yet in its ultimate analysis, it turns as to the land upon usury, and as to the mules upon bailment. Touching the fact of usury or no usury the evidence was conflicting. This conflict ought to have been decided by the jury. The court, however, relieved them, as to the homestead, from the labor and responsibility of any decision whatever, by charging that, as Mrs. Tribble had come into equity to assert the homestead right, she was bound to tender the principal and lawful interest of her husband's debt, or she must fail. This charge was radically erroneous. In the first place, she was both in law and equity; a court of law was her first selection, and her appearance in equity was by concert and consent of all parties; no just or rightful view of her position would involve the surrender of any of her legal rights; she was in equity by arrangement with her adversary, not to abandon her legal case, but to

prosecute and carry it on ; her original application for homestead was still pending, and was consolidated with several other cases in which her adversary was plaintiff; this was the vehicle upon which her freight was aboard, and she merely went into equity for a team to pull it.   But, in the second place, the homestead right stands no lower in equity than it does at law.   In either court it is superior to all claims whatever, except those specified in the constitution. Whether a creditor has charged usury or not, he must stand aside when the homestead right is asserted for it is a right that prevails equally against principal and lawful interest as against usury.   It does not have to purchase recognition, but may demand it anywhere and everywhere. When the applicant for homestead goes into equity, it is not to avoid usury merely, but the chief object, it may be supposed, is to resist the collection of principal and interest.   To grant homestead on condition of paying the real debt, would be to grant it as against the usury only.   It is a wide misconception of the homestead law to require a debt to be paid or tendered before the homstead right can be set up against it.   If an absolute deed given to secure a debt be tainted with usury, the legal title remains in the debtor, and it is upon that which the homestead right attaches.   The deed being void as title, is alike void at law and in equity, and in neither court is the payment or the tender of anything a condition precedent to treating it as void where the mere question of title is involved.   As against a deed passing title, the claim of homestead is of no avail either at law or in equity, while the title is outstanding.   The court was quite mistaken in making the case turn in any degree upon the peculiar doctrines of equity, or the distinctions of forum.

2. The charge which we have just considered was alike fatal to the homestead whether there was usury or not; for if there was no usury the jury had to find against the homestead because the title was in Anderson, and if there was usury, they had to find against the homestead because

the applicant did not tender principal and interest.   But as the case is to be tried over, several other points are important to a future result, and ought to be determined.   One of these is the question of what effect the settlement, or alleged settlement, of December, 1874, taken in connection with the instrument of January 10th, 1876, had upon the title, supposing the deed of January 10th, 1873, to have been infected.   If that settlement had been left to stand, and was a real cancellation or satisfaction of the debt, it may be conceded for argument's sake, that as there was no usury law in existence at the time, the land would thenceforth have belonged to Anderson ; but in point of fact the settlement was not left to stand ; the debt was re-opened after the usury laws were restored, and this was a virtual rescision of the contract of settlement, and being so, the question would be whether the debt was purged or not purged when the re-opening took place.   There is evidence on this point in the record, but what it proves we do not undertake to say.   If all the usury was not purged out, the infection remained and tainted the instrument of January 10th, 1876, so that Anderson's legal title would not be aided by that instrument.   But if there was a complete purging, that instrument, as it is a renunciation of title by Tribble, with a power of sale to Anderson, would itself be a good conveyance for security of the debt, passing the legal title for that purpose into Anderson, and sufficient to hold the land even against the homestead right until the debt shall be paid.   The efficiency of this instrument as a muniment of title depends entirely upon whether the debt was purged or not purged, supposing the debt to have been corrupt.

3. As to the waiver of homestead which the instrument contains, that is not needed by Anderson for his protection if the debt was untainted, or if being tainted it was purged. If he is in a situation to need it, he can take no benefit from it ; for while the waiver of homestead is not a conveyance, it is enough in the nature of a quit-claim title to be sub-

ject to the general rule ordained by statute against passing any kind of title to property for a usurious purpose or as part of a usurious contract. The homestead right is a right in property, and to waive it in favor of a creditor is substantially the same thing as to convey it away—the same, certainly, in respect to putting the debtor in the power of the creditor. And it is, we apprehend, to keep the debtor out of the power of the creditor, so as to give due scope to the plea of usury if the former should at any time feel inclined to use it, that the rule against connecting title with usury has been adopted. The waiver of homestead is within the reason and spirit of the statute, because there would be little difference to the debtor and his family between allowing the usurer to acquire title to his property to secure a usurious debt, and allowing the usurer to acquire a lien upon it with a waiver of homestead for the same purpose. In either case, the property, if only of equal value with the amount of the debt, and sometimes though of much greater value, would be gone sooner or later if the debt was not paid. Perhaps we need not directly invoke the statute, either in its letter or spirit, to reach the result at which we have arrived; for the undoubted policy of the law is to discourage and repress usury ; usury is odious to the law ; while homestead is favored by the law. The one is an outcast and reprobate ;· the other, a fostered institution of the state. Usurious contracts are regarded as corrupt or tainted, and the usurer is, so far, a trampler upon the very law to which he looks for protection. If he will violate the law for the purpose of gain, shall he at the same time clutch his debtor's homestead right as security for his principal and lawful interest? Shall he have the same security for these when he breaks the law as other creditors have who keep the law ? Because the homestead right can be waived in a pure contract, does it follow that it can be waived in a contaminated contract ? We think not, and so rule. It is contrary to public policy to bind the homestead right as security for an usurious debt ;· the taint of usury affects the security and renders it void.

4. The next point is as to the effect of the so-called tenancy, and this rests upon a like principle. Estoppel is not applied to prevent inquiring into usury. If a deed will not estop surely a note for rent will not estop, nor will any contract of renting. Out of a title void for usury, and a contract of renting based thereon, no tenancy, no relation of landlord and tenant, will arise. The usury stalks like a pestilence through every form of contract, and poisons all it touches. Tenancy can no more grow out of an usurious title where both are parts of the same scheme of usury, than a man can become his own tenant and be landlord to himself. There can be no rent, and no right to rent. And the like rule holds as to personalty, in respect to title and hire.

5. It will be seen that we only declare the effect of usury, without intimating any opinion as to its presence or absence in this particular case. That is a question for the jury, and so we intend to leave it. It was, however, insisted, as matter of law, that when the statute allowed a conventional rate of interest higher than the general rate, on condition that the contract therefor was in writing, the rate stipulated for or agreed on had to be expressed in the writing, and that to add the principal and interest together, giving a note for the aggregate, would not be a compliance with the statute. We think otherwise. The statute merely intended to distinguish between written and parol contracts, declaring the former effectual and the latter not. The promise to pay might be so much in a round sum, provided the statutory limit as to rate was not exceeded, and if the promise and the sum were evidenced by writing the contract would be in writing. Of course, the more detailed statement of the terms of the contract would also suffice where it was the pleasure of the parties to set them out.

6. The void sale of the mules by the constable, his only warrant being a mortgage *fi. fa.* issued by a justice of the peace, gave no title to the purchaser. But if the owner, with a knowledge of all the facts, acquiesced in the sale

Tribble *et al. vs.* Anderson.

and hired the mules from the purchaser, why was it not an adoption of the constable's void act, and a ratification of the sale? Doubtless the price paid went to the payment of the mortgage debt, and if so, the owner of the mules was benefited to that extent. Perhaps he was well satisfied with the price and with the application of the money, and for that reason cared not whether the sale was legal or illegal. The purchaser, it may be supposed, got possession of the animals from the constable, and passed that possession to the hirer. If the hirer thus acquired possession, it made a case of bailment, and the general rule holds that the bailee cannot, whilst retaining possession, dispute the bailor's title. If he had wanted to make an issue on the legality of a constable's sale, he ought not to have taken the position of hirer or bailee under the purchaser—I mean if he had wanted to make that issue with the purchaser. Of course, his wife, on a claim of the mules as her husband's, and as therefore exempt, cannot make the issue if he is estopped from making it. If the hiring was only colorable and a cloak for usury, no estoppel would arise against either. We have spoken of a real hiring, not of a mere sham.

7. It is manifest at a glance that most if not all the objections filed by Anderson to the application for homestead were not appropriate to that sort of proceeding. Disputes about title to the property, or about liens upon it, are generally not to be raised and settled in that way. But here the parties have agreed to consolidate their litigation, raise the real issues and have them tried on the merits, and they conducted the trial accordingly. The evidence had the widest range, and brought before the court and jury everything that the parties were disputing about. In so far, therefore, as the charge of the court cut off any part of the case from the jury which the consent arrangement of the parties embraced, or authorized the jury to arrive at a verdict on principles which would leave the main controversy still open, the charge was erroneous. Certainly this

was done in respect to usury in its relation to the homestead right, and were there no other error a new trial ought to have been granted for that one.

8. The withdrawal of the case temporarily from the jury, and occupying the minds of some of them with another case, then recombining the jury and proceeding to finish this case, was an improper practice, and counsel ought not to have been called on to consent to it. What the court ought not to do at all, should not be suggested by it as expedient, and then done on a consent thus obtained. Judges are, in mental habits and training, fitted somewhat for transferring the attention from one case to another, and passing to and fro between them, without confusion, but ordinary jurors, we believe, ought to cope with but one case at a time. And this accords with the general usage of courts—so general, that no single instance to the contrary, except the present, has ever come under our observation. We know of no authority for it, and no precedent has been cited other than the practice of the learned judge in his own circuit.

Judgment reversed.