<i>Judgment reversed. All the Justices concur.</i><br>JULY 15, 1914.

Money rule. Before Judge George. Crisp superior court. June 19, 1913.

*Philip Newbern, Alex. Koplin,* and *A. J. McDonald,* for plaintiff in error. *Fulwood & Skeen,* contra.

---

## CAMP LUMBER CO. *v.* CITIZENS BANK OF VALDOSTA.

1. No greater rate of interest than 8 per cent. per annum can lawfully be reserved, charged, or taken, directly or indirectly, by any contract or contrivance whatever, for any loan or advance of money in this State.

2. Suits for the recovery of usury must be brought within twelve months from the payment thereof.

3. A petition is not subject to demurrer which alleges, in substance, as follows: The plaintiff borrowed from the defendant bank the sum of forty thousand dollars, and agreed to pay for the use of the money the sum of ten thousand dollars, and to secure the notes (for fifty thousand dollars) the plaintiff executed conveyances of certain realty to

the president of the bank individually, who in turn conveyed it to the bank, which executed to the plaintiff a bond for title to the land. Subsequently the plaintiff paid to the bank the principal sum due on the notes, with legal interest thereon, but refused to pay the excess interest. Desiring to sell a portion of the realty conveyed to the bank, the plaintiff and the bank entered into a written agreement whereby the bank assented that the plaintiff might sell the realty, and the purchase-money notes therefor were placed with the bank for collection, with the agreement that if the plaintiff and the bank could not agree as to the payment of the usury alleged to be charged the plaintiff, then suit should be brought to determine the question of usury, provided it was brought within six months from the date of the agreement. Plaintiff and the bank could not agree as to the payment of the alleged usury; and this suit is filed by the plaintiff against the bank after the expiration of six months from the date of the agreement, but within twelve months, to recover the amount collected by the bank on the notes left with the bank as collateral security, and for the purpose of cancelling the note of the plaintiff made to the bank and all conveyances to secure the same, it being alleged that this note contained only usury and that the deed to secure the same was infected with usury and void.

JULY 15, 1914.

Equitable petition. Before Judge Thomas. Lowndes superior court. August 4, 1914.

The R. J. & B. F. Camp Lumber Company, a corporation under the laws of the State of Florida, and George W. Saxon, Frank Roberts, W. B. Cate, H. E. Taylor, and J. A. Maultsby, as trustees under a certain deed of trust executed to them by the lumber company for the benefit of its creditors, brought suit against the Citizens Bank of Valdosta for the recovery of usury and for other relief. The defendant filed its demurrer to the petition, which was sustained, and the plaintiffs excepted. The material allegations of the petition set out, in substance, that the Citizens Bank of Valdosta had loaned to the R. J. & B. F. Camp Lumber Company the sum of forty thousand dollars, but was unwilling to make the loan in consideration of the highest rate of interest the lumber company could legally obligate itself to pay under the laws of Georgia. The bank and the lumber company finally agreed that if the bank would make the loan the lumber company would pay to the bank the sum of $10,000 over and above the legal rate of interest for the advance of the money. The lumber company accordingly executed to the bank twenty-five promissory notes for the principal sum of $2,000 each, the first of which should be due and payable on the 17th day of July, 1907, and monthly thereafter for twenty-four months, all

of the notes stipulating for the payment of interest from date at the rate of 8 per cent. per annum and ten per cent. attorney's fees. To secure the payment of the notes the lumber company executed a conveyance in the form of an absolute warranty deed conveying a very large tract of timber lands in South Georgia and Florida, the principal stockholders in the company and their wives joining in the execution of the conveyance. In order to avoid the appearance of charging excessive interest for the advance of the money, and purely as a device to evade the usury laws of the State, the bank required the lumber company and its stockholders and their wives to execute the deed of conveyance to John F. Lewis (the president of the bank) individually, who subsequently transferred the conveyance to the bank to secure the payment of the fifty thousand dollars; and the defendant bank executed its bond for title to reconvey the property upon the payment of the twenty-five promissory notes. John F. Lewis did not in fact pay or agree to pay the lumber company the consideration, and there was no consideration whatever except the $40,000 loaned by the bank, to secure which the deed was given. The notes covered not only the $40,000 loaned to the company by the bank but also the $10,000 charged for the advance of the money, the same being over and above the legal rate of interest. Prior to the 18th day of November, 1911, the lumber company paid to the bank twenty of the promissory notes first maturing, amounting in the aggregate to the principal sum of $40,000, with interest on each of them from date at the rate of 8 per cent. per annum, and refused to pay the remaining five notes for the aggregate principal sum of $10,000, with interest at 8 per cent. per annum. The lumber company owed large sums to creditors other than the bank, and, in order to secure the payment of them, executed a deed of trust to certain of the creditors, among whom are plaintiffs in this petition. By the terms of the trust deed all the assets of the lumber company, including large bodies of timber land, sawmills, etc., were conveyed to the trustees for the use of the creditors of the company. The trustees together with the officers of the lumber company were to operate the company for the benefit of its creditors until they were all paid, etc. During the summer of 1911, by and with the approval of the trustees, the lumber company opened negotiations with the A. G. Garbutt Lumber Company, a corporation of Echols county, Georgia, for the sale of all the timber on

certain lots of land in Echols county, the same being covered by
the conveyance executed by the Camp Lumber Company and R. J.
& B. F. Camp and their wives to John F. Lewis, which was trans-
ferred by the latter to the Citizens Bank of Valdosta. The Camp
Lumber Company finally agreed with the Garbutt Lumber Company
upon the terms of sale of the timber for the consideration of $21,-
875, $2,000 thereof to be held up until the termination of a certain
suit pending in the superior court of Echols county, wherein L. J.
Strickland was plaintiff and the Camp Lumber Company was de-
fendant, which suit involved certain of the timber. The balance of
the purchase-price, amounting to $19,875, was to be paid by the
Garbutt Lumber Company in installments of $2,000 per month,
except the last one of $1,875; and the payments were to be repre-
sented by notes executed by the Garbutt Lumber Company and
secured by a mortgage on the timber so conveyed, etc. As the bank
held the conveyance executed by the Camp Lumber Company to
John F. Lewis and by him transferred to the bank, and was appar-
ently the holder of the legal title to the timber, the Garbutt Lumber
Company refused to consummate the trade without the consent and
approval of the bank and its agreement that it would not molest
it in the cutting and removal of the timber. On the 28th day of
November, 1911, the bank, the Garbutt Lumber Company, and the
Camp Lumber Company entered into a written agreement whereby
the bank assented to the trade upon certain terms and conditions
in the agreement set forth at great length, the material portions of
which will be set out later. In November, 1911, the Camp Lumber
Company and the creditors' committee, or trustees, executed to the
Garbutt Lumber Company a deed conveying all their right, title,
and interest in and to all the timber on the lots of land above alluded
to. The Garbutt Lumber Company thereupon executed and de-
livered to the Camp Lumber Company nine promissory notes for
the sum of $2,000 each and one note for $1,875, bearing interest
at the rate of 8 per cent. per annum, which notes covered the pur-
chase-price of the timber, exclusive of $2,000 held by the Garbutt
Lumber Company under the terms of the agreement, etc. On the
same day the Camp Lumber Company transferred and assigned to
the bank all of the promissory notes except the first one, maturing,
together with the mortgage, in accordance with the terms and con-
ditions of the contract; and the bank has since collected six of the

promissory notes so assigned to it, amounting in the aggregate to the sum of $12,000, besides interest thereon amounting to $360. The bank holds the sum of $12,360 collected by it from the Garbutt Lumber Company on the notes, upon its right to apply the same or so much thereof as may be necessary to the payment and satisfaction of the five promissory notes executed by the Camp Lumber Company to it on the 17th day of June, 1907, representing the usury as alleged, and refuses to pay the Camp Lumber Company the money or to apply it in any way except to the payment of the usury covered by the notes. For the foregoing reasons the five notes held by the bank against the Camp Lumber Company, bearing date of June 17, 1907, are not legal and binding obligations of the company; and the conveyance executed by it to John F. Lewis for the purpose of securing the loan which was transferred by him to the bank, being infected with usury, is void. By the contract between the bank, the Garbutt Lumber Company, and Camp Lumber Company, it is provided in substance that the bank shall hold the money collected on the notes of the Garbutt Lumber Company, or so much thereof as may be sufficient to cover the amount of principal and interest of the five notes of Camp Lumber Company held by it until the validity or legality of the last-mentioned notes and of the transaction in which they were given, on the ground of usury, shall be adjusted and settled between the parties, or, in the event of their failure to reach an amicable adjustment, until the adjudication thereof by the court. The Camp Lumber Company has been unable to adjust the controversy with the bank. The bank will not acknowledge that the five notes are illegal and not binding upon the Camp Lumber Company, and will not undertake to force the payment of the notes, by suit or otherwise, except by applying the proceeds of the notes collected by it from the Garbutt Lumber Company to the satisfaction of the notes. The agreement entered into between the Citizens Bank of Valdosta and the Camp Lumber Company and the Garbutt Lumber Company provided, in part: that in case of the sale of the timber lands to the Garbutt Lumber Company, all the notes, except the first maturing note for two thousand dollars, shall be assigned by the Camp Lumber Company to the Citizens Bank of Valdosta, together with such security as may have been given for the payment of the same, and that "a sufficient portion of the amount first accumulated by the payment of said notes,

from month to month, to cover the amount of the principal and interest upon said five promissory notes shall be held by said bank until the validity or legality of said notes and of the said transaction on the ground of usury shall be adjusted and settled between the said Citizens Bank of Valdosta on the one part, and the said R. J. and B. F. Camp Lumber Company and its Creditors' Committee on the other part, or, if they shall be unable to come to an amicable agreement about the same, until the adjudication and determination thereof by the court, provided legal proceedings therefor shall be commenced within six months from the date hereof," etc. The prayers were, among others, that the deed of conveyance executed by the Camp Lumber Company to John F. Lewis, and transferred by him to the bank, be decreed to be infected with usury and void; that the same together with the transfer be delivered up and canceled, and that the petitioners have judgment against the bank for the sum of money collected by it from the Garbutt Lumber Company on the notes executed to the Camp Lumber Company, which sum the bank threatens to apply on the five promissory notes of the Camp Lumber Company.

*E. K. Wilcox, A. B. Small,* and *Little, Powell, Hooper & Goldstein,* for plaintiffs. *W. A. Dodson,* for defendant.

HILL, J. (After stating the foregoing facts.) One of the grounds of demurrer alleges that the petition should be dismissed because of the plaintiffs' failure to comply with the terms and conditions of a certain agreement, dated November 18, 1911. The material portions of this agreement were as follows: "Now, wherefore, it is agreed between the parties hereto that if said sale be consummated, all of said notes, except the first maturing note for two thousand dollars, shall be assigned by the R. J. & B. F. Camp Lumber Company to the said Citizens Bank of Valdosta, together with such security as may have been given for the payment of the same, and that a sufficient portion of the amount first accumulated by the payment of said notes, from month to month, to cover the amount of the principal and interest upon said five promissory notes shall be held by said bank until the validity or legality of said notes and of the said transaction on the ground of usury shall be adjusted and settled between the said Citizens Bank of Valdosta on the one part, and the said R. J. & B. F. Camp Lumber Company and its Creditors' Committee on the other part, or, if they shall be unable to come to an amicable agreement about the same, until the adjudi-

cation and determination thereof by the court, provided legal proceedings therefor shall be commenced within six months from the date hereof." This agreement was executed between the plaintiffs in this case and the defendant bank with reference to certain notes alleged by the plaintiffs in their petition to have been given for the payment of usurious interest arising from another transaction. The plaintiffs desired to sell a portion of the property transferred to the defendant bank to secure the notes held by it against the plaintiff, and the defendant bank agreed that this be done, provided enough of the purchase-money notes were deposited as above set out. The case hinges upon the legality of this agreement. The contract bore date November 18, 1911, and the suit was not filed until the 27th day of August, 1912, more than six months from the date of the agreement. If the contract that suit must be commenced within six months is legal, then the plaintiffs are barred of recovery. But if the contract is illegal and void for any reason, then the plaintiffs have the statutory period of twelve months within which to bring their action. The Civil Code, § 3436, provides: "It shall not be lawful for any person, company, or corporation to reserve, charge, or take, for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than eight per centum per annum, either directly or indirectly by way of commission for advances, discount, exchange, or by any contract or contrivance or device whatever." And section 3441 declares: "Any plea or suit for the recovery of such forfeiture shall not be barred by lapse of time shorter than one year." The action is in the nature of a suit for money had and received. At common law, and under the statutes of our State, the payment by a debtor of usury to a creditor gives a right of action in favor of the debtor for the amount of the usury so paid. As said by Nisbet, J., in the case of *Whitehead* v. *Peck,* 1 *Ga.* 140, 149: "In cases where the borrower pays the usurious interest himself, the statute against usury, and the fact of payment, create a contract. There is in the transaction a direct relation between the parties, viz., privity. The money is paid by the plaintiff and is received by the defendant *for his use.* It is the money of the plaintiff which he holds, and it being received, against the statute of usury, he can not retain it in conscience. Ex æquo et bono, the plaintiff is entitled to it. In that case the borrower could certainly recover."

See also *Parker* v. *Fulton Ass'n,* 42 *Ga.* 451-454; *Pope* v. *Marshall,* 78 *Ga.* 635 (4 S. E. 116).

This case is here on exceptions to the judgment of the court below in sustaining the demurrer to the petition. The demurrer admits the well-pleaded allegations. The petition shows that the lumber company did not owe the bank anything on the principal sum, or any legal interest on the original debt. The principal and the legal rate of interest had been paid in full. There was nothing in the nature of a debt held by the bank against the lumber company, except the notes which represented the alleged usurious interest. This agreement was entered into between the bank and the lumber company, and by its terms the bank was to receive the proceeds of certain notes belonging to the lumber company and apply them to the settlement of the usury note, alleged to be only for the usurious interest. The contest over the usury is the basis of the contract. And the consideration of the agreement to sue within the six months is based upon the note containing the usury. This being the consideration, an agreement to sue for usury within a period less than that fixed by the statute is as illegal and void as the collection of the usury itself. As said by Judge Bleckley, in *Tribble* v. *Anderson,* 63 *Ga.* 56, "Usury stalks like a pestilence through every form of contract, and poisons all it touches."

The lumber company arranged to pay the usurious interest, it is true, by placing notes as collateral security with the bank, with authority to collect and appropriate the payment in case of non-agreement of the parties, or failure to sue within the time agreed upon. The surroundings of the case indicate that the agreement was secured through "a kind of moral duress, just as debtors are supposed to pay usury in ordinary cases." *Pope* v. *Marshall,* supra. It was said in that case (78 *Ga.* 640), "No disguise of language can avail for covering up usury, or glossing over an usurious contract. The theory that a contract will be usurious or not according to the kind of paper bag it is put up in, or according to the more or less ingenious phrases made use of in negotiating it, is altogether erroneous. The law intends that a search for usury shall penetrate to the substance." It is insisted that the real consideration for the agreement to sue within six months was the releasing of the property held by the bank as security for the note due by the lumber company. But back of it all the chief bone of contention was the

ten thousand dollars usury claimed to be due by the lumber company to the bank. That was "the substance" that each party to the agreement was contending for. And this being true, the consideration of the agreement was void.

The defendant cites a number of decisions to the effect that the period fixed by statute within which suit may be brought can be lessened by agreement; but these cases all related to contracts—mostly insurance—where the subject-matter was lawful, and they were based upon a valid consideration. In the instant case the consideration was unlawful. The entire balance of the note due by the lumber company to the bank, if the allegations of the petition are true, represented usury, the collection of which is unlawful under our statute. Section 3440 of the Civil Code provides: "No contrivance or arrangement between the parties to any such unlawful transaction, or their privies, shall have the effect to discharge such forfeiture, except it be an actual and full payment of the amount so forfeited," referring to the forfeiture of the excess beyond lawful interest. Assuming the allegations of the petition to be true, the note held by the bank against the lumber company contains only usury, and is therefore void; and no device or contrivance whatever by which the parties agreed to pay or secure the usurious note is valid and enforceable. Like the note itself, the effort to secure the note, and require the lumber company to bring suit within six months, is absolutely void. Nor could the lumber company waive its legal rights upon a consideration which was usurious and void. See *Cleghorn* v. *Greeson*, 77 *Ga.* 343; *Lowry* v. *Parker*, 83 *Ga.* 341 (9 S. E. 677) ; *Tribble* v. *Anderson*, 63 *Ga.* 55.

But it is argued that the bank had not applied the money collected from the Garbutt Lumber Company, and which belonged to the plaintiff, to the usurious note of the lumber company up to the time of bringing the suit, but was merely threatening to apply it. There is no question raised in the record but that the sum claimed to be due to the bank is usurious. The bank has deeds to the plaintiffs' land to secure that debt. All deeds tainted with usury are void. This is an equitable petition to cancel the deeds as being void because tainted with usury. A court of equity, having jurisdiction of the case for the purpose of cancelling the deeds if found to be tainted with usury, would also require the money in the hands of the bank, which was collected from the Garbutt Lumber Com-

pany and which the bank had no right longer to hold, to be paid to the plaintiff and the usurious notes and conveyances canceled. We think that the petition set forth a cause of action, and that the court erred in sustaining the demurrer. See Page on Contracts, § 513.　　　*Judgment reversed.　All the Justices concur.*