## POPE *vs.* MARSHALL.*

1. If the sole heir at law of a deceased borrower pays the debt, including the usury thereon, to free his inheritance from the cloud or apparent incumbrance of an absolute deed made by the borrower to the lender as security for the usurious loan, he can recover back the usury so paid. The right of action is in him, and not in the administrator of the deceased borrower.

2. Whether a given transaction is a purchase of land, or a loan of money with title to the land taken as security, depends not upon the form of words used in contracting, but upon the real intent and understanding of the parties. No disguise of language can avail for covering up usury, or glossing over an usurious agreement.

3. On the question of loan or purchase, the value of the land conveyed may be proved by either party, but in favor of the heir, the estimate of its value by the maker of the deed is not admissible

May 4, 1887.

Debtor and Creditor. Title. Interest and Usury. Actions. Administrators and Executors. Contracts. Evidence. Before Judge WILLIS. Taylor Superior Court. February Term, 1886.

Reported in the decision.

H. A. MATHEWS; A. A. CARSON, by C. J. THORNTON, for plaintiff in error.

W. S. WALLACE & SON, for defendant.

BLECKLEY, Chief Justice.

The action was by Pope against Marshall to recover money alleged to have been paid as usury. There was a

*This case was argued at the last term, and the decision reserved.

verdict for the defendant, and a motion by the plaintiff for a new trial, which was overruled.

The undisputed facts are that, in January, 1882, Marshall either lent or paid to Pope's brother, since deceased, a sum of money, took from him an absolute deed in fee simple, conveying certain real estate; also two rent notes and a written acknowledgment that he, the brother, held the premises under Marshall, as his tenant, and gave to him a bond conditioned to reconvey in the event the principal sum, together with the rent notes, should be paid. To meet the conditions of the bond required the payment of more money than was advanced by Marshall and lawful interest thereon. The brother remained in possession and died intestate, leaving the plaintiff his sole heir at law. In June, 1883, the plaintiff, in order to clear his title as heir and raise money upon a mortgage of the land with which to pay the debts of his deceased brother, voluntarily paid the debt to Marshall, including the usury, if any, and at the same time took from him a quit-claim deed to himself. The money used in making this payment was obtained by mortgaging the land to a third person, the plaintiff executing the mortgage and thereby securing the loan. After the whole matter had been thus closed up, the present action was brought to recover back so much of the money paid by the plaintiff to Marshall as was in excess of the principal sum received by the plaintiff's brother from Marshall, together with lawful interest thereon.

The parties are at issue both upon matter of fact and matter of law. The question of fact dividing them is, whether the transaction between Marshall and the plaintiff's brother was a loan of money, with a conveyance of the land taken as security, or whether it was a purchase of the land and payment made therefor, followed by an agreement for a resale, renting, etc. in accordance with the face of the papers. The question of law is, whether, granting that the transaction involved usury as between

Marshall and the deceased, the plaintiff can, after voluntarily paying it, recover it back, under the circumstances.

1. Against the plaintiff's right to recover back the alleged usury, it may be urged that as heir he was under no contract, express or implied, to pay the debt to Marshall, or any part of it; no action for it could have been maintained against him; the infected deed was utterly void, not only as title, but as security (*Broach vs. Smith,* 75 *Ga.* 159); it was therefore no incumbrance upon the plaintiff's inheritance; if it was a cloud on his title, it was created by his brother, who not only lived under it himself, but left it to hover over his heir, without showing any wish to have it dissipated; besides, the cloud was an empty mist, charged with no legal lightning that could strike the inheritance; moreover, he who voluntarily buys in a cloud of any sort is entitled to get the cloud, but not to keep it and recover his money back; the plaintiff accepted a conveyance, a quit-claim deed from the defendant, and it was in part to obtain that deed that he paid the debt; it was not his debt, but that of the intestate, and it was not paid out of the estate of the debtor, but with money belonging to the plaintiff, borrowed for the purpose by himself; while holding on to the deed made to him by the defendant, he seeks to recover back a part of the money paid to obtain it; and certainly this quit-claim deed, at least, is free from any taint of usury. *Hammond vs. Buys,* 1 *Ga.* 416.

This array of argument is plausible, and to some minds will perhaps be convincing. But we think its weak point lies in the fact that it treats the plaintiff as a mere interloper or volunteer. He succeeded by inheritance to his brother's interest in the land, whatever that was. Code, §§2246, 2483. Succeeding him in interest, he succeeded him also in the right, though not in the duty, to pay the debt and free the land from such incumbrance as there was upon it, whether that incumbrance was real or only apparent. If the fact be that Marshall made a loan to the in-

testate upon the land as security, the plaintiff was entitled to treat the security as binding the land, whether it really bound it or not, and he might have gone into equity and compelled Marshall to accept his principal with lawful interest, and either surrender his muniments of title or execute a quit-claim. Perhaps an administration upon the intestate's estate might be needed to make this remedy effective, but in some way the relief could be obtained beyond all doubt. New York had a statute which, in case of an incumbrance to secure a loan infected with usury, enabled the borrower to maintain an action to cancel the incumbrance without the payment of anything, principal, interest or usury. A line of decisions followed which seemed to recognize an heir as included in the term "borrower," and as therefore entitled to take advantage of the statute. But at length, in Buckingham *vs.* Corning, 91 N· Y. 525, in which a devisee sought to take advantage of the statute, the prior cases were reviewed, and this wide construction of the word "borrower" disapproved. Accordingly it was ruled that a devisee could not have a mortgage cancelled without tendering principal and lawful interest. But there is no suggestion in any case, text-book or other book, so far as we can discover, and we have made wide search, that an heir or a devisee may not, without any statute which includes him, have incumbrances cancelled by tendering payment of principal and lawful interest. To cancel without paying anything would certainly require the express warrant of a statute.

If, in paying principal and lawful interest, the plaintiff was not acting as an intermeddler or mere volunteer, but was in the due exercise of his own legal or equitable right, it is difficult to see how he was any more of a volunteer in paying the usury than the debtor himself would have been had he paid it in his lifetime. No legal obligation rests upon a debtor, more than upon his heir, to pay usury. Either one of them, paying it with knowledge, pays it voluntarily—that is, without being bound to do it. The cred-

itor receives it under color of right.   Here there was color
of right as against the land, though none against the plain-
tiff personally.   And had the plaintiff not yielded, for the
time, to this color, there is no indication in the evidence that
he could have gotten rid of the color without a lawsuit.   By
reason of the hold which the creditor had upon the land as
apparent owner of the title, according to the papers in his
possession, the plaintiff was as much hampered in the exer-
c'se of his free will touching the payment of usury as if the
debt had been his own.   He thus paid the usury under a
kind of moral duress, just as debtors are supposed to pay
usury in ordinary cases.   And there seems to be equal
reason for allowing him to recover it back.   The code de-
clares it unlawful for any person to receive, charge or take
usury for any loan, advance or forbearance to enforce the
collection of money, and subjects any one so doing to a
forfeiture of the amount in excess of legal interest charged
or taken.   Code, §§2057 (a), (b).   It does not say expressly
to whom the offender forfeits the money taken in violation
of the statute, but the fair and natural construction is, that
the person who pays the money, or whose money goes in
payment of the usury, is the one intended.   It would be
quite anomalous to hold, as seems to have been thought by
the court below, that payment by the heir with his own
money would raise a cause of action in favor of the ad-
ministrator.   If the sole heir at law of a deceased borrower
pays the debt, to free his inheritance from the cloud or
apparent incumbrance of an absolute deed made by the
borrower to the lender as security for the usurious loan,
he can recover back the usury so paid.   The right of action
is in him, and not in the administrator of the deceased bor-
rower.   The deed from Marshall to the plaintiff is a mere
release and quit-claim of " all the right, title, interest,
claim or demand the said Marshall has or may have had
in and to " the premises.   Upon the supposition that the
maker of this deed held the formal legal title merely as
security for a loan, the deed furnishes evidence that the

loan has been repaid, but can have little or no other effect. A simple receipt for the money would perhaps have been quite as efficacious.   At all events, we do not see that the deed is any stronger or more comprehensive than such as equity would have decreed to be made upon the payment of principal and interest alone.

2. With respect to the question of fact to which I have referred as in issue between the parties, we express no opinion further than to say that whether a given transaction is a purchase of land, or a loan of money with title to the land taken as security, depends not upon the form of words used in contracting, but upon the real intent and understanding of the parties.   No disguise of language can avail for covering up usury, or glossing over an usurious contract.   The theory that a contract will be usurious or not according to the kind of paper-bag it is put up in, or according to the more or less ingenious phrases made use of in negotiating it, is altogether erroneous.   The law intends that a search for usury shall penetrate to the substance.

3. There was no error in excluding evidence of the estimate put upon the land by the intestate, offered to throw light upon the purpose and object of the deed from him to Marshall.   This evidence when offered by his heir is no less objectionable than if offered by himself; and certainly he could not give character to his deed by showing what he had thought or said as to the worth of his land.   On the question of loan or purchase, the value of the land conveyed may be proved by either party, but in favor of the heir the estimate of its value by the maker of the deed is not admissible.

Judgment reversed.