19327. FIRST FEDERAL SAVINGS & LOAN ASSOCIATION
OF ATLANTA *v.* NORWOOD REALTY CO., INC.

Argued May 16, 1956—Decided July 9, 1956—
Rehearing denied July 24, 1956.

*Johnson, Hatcher & Meyerson, Henry M. Hatcher, Jr., Horace Russell,* for plaintiff in error.

*Crenshaw, Hansell, Ware & Brandon, John H. Boman, Jr.,* contra.

CANDLER, Justice. (After stating the foregoing facts). 1. Code § 57-101 makes it illegal to reserve, charge, or take for any loan or advance of money any rate of interest greater than 8% per annum, either directly or indirectly by way of commission for advances, discount, or by any contract or contrivance or device whatever. As said by this court in *Newcomb* v. *Niskey's Lake, Inc.,* 190 *Ga.* 565, 567 (10 S. E. 2d 51), exaction of usury is odious, illegal, and immoral. "Any person, company, or corporation violating the provisions of section 57-101 shall forfeit the entire interest so charged or taken, or contracted to be reserved, charged, or taken." Code § 57-112. But by the provisions of Code § 16-101 as codified from an act which the legislature passed in 1888 (Ga. L. 1888, p. 47), and from subsequent amendments thereto, all building and loan associations are authorized to lend money to persons not members thereof nor shareholders therein at 8% per annum or less, and to aggregate the principal and the interest for the entire period of the loan into monthly or other instalments, and to take security by mortgage with waiver of exemption or title, or both, upon or to real estate situated in the county in which such building and loan association may be located; and such building and loan association shall be construed to be located in any county wherein it has an office, agent, or resident correspondent, and loans when so made by a building

and loan association are deemed and declared not to be usurious. On October 19, 1891, the Governor approved an act passed by the legislature (Ga. L. 1890-91, p. 176), to regulate the business of building and loan associations theretofore or thereafter incorporated which do business outside of this State. Section 8 of this act which is embodied in the Code of 1933 as § 16-210 declares: "No fines, interest, or premiums paid on loans in any building and loan association shall be deemed usurious, and the same may be collected as debts of like amount are now collected by law, and according to the terms and stipulations of the agreement between the association and the borrower." The act of 1891, as amended, is in its entirety embodied in our present Code as Chapter 16-2, entitled "Interstate Building and Loan Associations," and, as stated, Code § 16-210 is a part of the chapter. In 1898 this court had for decision *Cook* v. *Equitable Building &c. Assn.*, 104 *Ga.* 814 (30 S. E. 911); and while dealing specifically with that part of the act of 1891 which is now Code § 16-210, it was there by headnote 3 said: "A member of such association who has been advanced money on his shares may undertake, in addition to paying the legal rate of interest on such money, to pay dues and premiums for such advancement on his stock; and also fines, in the event of a failure to comply with his obligation. When such dues and premiums, paid for the privilege granted the advanced member, go into the common fund of the association, and are so applied as to aid in the maturity of the stock upon which the advancement was made, they do not constitute interest upon the money advanced, and such a contract is not, therefore, usurious." And in the opinion at page 827 it was also said: "It is insisted by counsel for plaintiff in error, that this act is unconstitutional in that it seeks by special law to enact certain things for which provision has been made by existing general law. It is contended that the legislature cannot pass a general usury law, and afterwards exempt by special legislation a certain class from its operation. We do not think the statute obnoxious to this provision in the Constitution. It was not intended to legalize a charge of usury by a building and loan association." During December, 1937, and after *Swofford* v. *First Nat. Building &c. Assn.*, 184 *Ga.* 312 (191 S. E. 103), had been decided on April 15, 1937, the legislature passed an act

(Ga. L. 1937-38, Ex. Sess., p. 307), the caption of which is in part as follows: "An act to define a building and loan or a savings and loan association and to fix the privileges and immunities of such state chartered associations and federal savings and loan associations and their officers." Section 2 of the act, as amended in 1945 (Ga. L. 1945, p. 263), is in part as follows: "A State chartered association is local if its investment in home loans is limited to loans on the security of a first lien on real estate located not more than fifty miles from such association's home office." And a State chartered association is mutual if all members participate in the income of such association and if all borrowers are privileged to vote at least one vote at any meeting of members, it being unnecessary that any borrower should subscribe to or purchase any shares or should be entitled to participate in any way in the income of such association. By the amended act all State chartered building and loan associations and all Federal savings and loan associations which operate pursuant to the definitions stated in section 2 of the amended act are declared to be local and mutual building and loan associations organized as a civic undertaking, not for financial gain within the meaning of the existing statutes of this State and the decisions of the appellate courts of this State, and, as such, said associations and their officers are entitled to all of the privileges and immunities of such associations. The act, with its amendment, specifically enumerates and fixes the privileges and immunities which State chartered building and loan associations and Federal savings and loan associations have in this State. It expressly states that § 16-101 of the Code of 1933 is not repealed thereby, but makes no reference to Code § 16-210 which was codified from the act of 1891. Except for retention and preservation of the provisions of Code § 16-101, it does not undertake to exempt such associations from the operation of our usury statute or the penalty imposed by Code § 57-112 for usurious interest charged or taken or contracted to be charged or taken. As we view the amended act, it deals exhaustively with and fixes the privileges and immunities which such associations and their officers have under the laws of this State; and the legislature having so dealt with the subject, the amended act repeals by implication any immunity or exemption from the operation of

our usury statute which such associations may have previously had, except that granted by Code § 16-101. For support of this, see *Butner.* v. *Boifeuillet,* 100 *Ga.* 743 (28 S. E. 464); *Horn* v. *State,* 114 *Ga.* 509 (40 S. E. 768); *Peacock* v. *Larsen,* 180 *Ga.* 444 (178 S. E. 922). A Federal savings and loan association, upon its incorporation, automatically becomes a member of the Federal Home Loan Bank of the district in which it is located. 12 U.S.C.A. § 1464 (f). And no Federal savings and loan association shall be retained in such membership if the combined total of the amounts paid to it for interest, commission, bonus, discount, premium, and other similar charges, less a proper deduction for all dividends, refunds, and cash credits of all kinds, creates an actual net cost to the home owner in excess of the maximum legal rate of interest or in case there is a lawful contract rate of interest applicable to such transactions, in excess of such rate (regardless of any exemption from usury laws), or, in case there is no legal rate of interest or lawful contract rate of interest applicable to such transactions, in excess of 8% per annum in the State where such property is located. 12 U.S.C.A. § 1425. Pursuant to power granted by Congress therefor, the Federal Home Loan Board adopted certain rules and regulations for the operation of Federal savings and loan associations, among which is the one prescribed by 1956 cumulative pocket supplement of Title 24, § 145.6-10 Code of Federal Regulations which in part provides: "Borrowers may be required to pay the necessary initial charges in connection with the making of a loan, including the actual costs of title examination, appraisal, credit report, survey, drawing of papers, closing of the loan, and other necessary incidental services and costs in such reasonable amounts as may be fixed by the board of directors; such necessary initial charges may be collected by the association from the borrower and paid to any persons, including any such director, officer, employee, attorney or firm rendering such services." Hence, as to the loans which a Federal savings and loan association may make in this State, there is no Federal statute which exempts them from the operation of our usury laws and the penalty imposed for taking or charging usury. We, therefore, hold that a Federal savings and loan association doing business in this State is subject to the operation of our usury laws and in making loans must comply

with the provisions thereof and with those of Title 12 U.S.C.A. § 1425. However, such association may require the borrower to pay the necessary initial charges in connection with the making of a loan which are authorized and permitted by the above-quoted Federal regulation in addition to interest at the lawful rate.

As shown by our statement of the facts, the amended petition alleges that the plaintiff, after paying all reasonable expenses incident to the loan, the validity of which payments is not here questioned, also paid a "service charge" of $63,050; that such charge was made by the defendant and paid by the plaintiff for no service rendered or to be rendered by the defendant; and that such so-called "service charge" was only a device and contrivance on the defendant's part to charge usury on the loan. In *Bank of Lumpkin* v. *Farmers State Bank*, 161 *Ga*. 801 (1) (132 S. E. 221), it was said: "The ingenuity of man has not devised a contrivance by which usury can be legalized, if it appears that the purpose of the scheme was to exact a larger profit for the use of the money actually advanced than 8% per annum." In 55 Am. Jur. (Usury) 381, § 84, the author says that "the device of charging for services must not be used as a mere cover to exact an additional profit in excess of legal interest; and therefore, the rule has been laid down that to be considered as lawful and to rescue the contract from the taint of usury, such a charge must be shown to be based upon some service rendered, trouble encountered, inconvenience sustained or risk assumed by the lender, other than the advance of money." And this court has uniformly and consistently held that a lender's charge for service, when no service was in fact rendered or to be rendered the borrower, is a charge for the use of the money advanced and is therefore interest. For some of the cases so holding, see *Pope* v. *Marshall*, 78 *Ga*. 635, 640 (4 S. E. 116); *Callaway* v. *Butler*, 79 *Ga*. 356 (7 S. E. 224); *Sanders* v. *Nicolson*, 101 *Ga*. 739 (28 S. E. 976); *Bishop* v. *Exchange Bank*, 114 *Ga*. 962 (2) (41 S. E. 43); *Reese* v. *Bloodworth*, 146 *Ga*. 355 (2) (91 S. E. 120). In this case, the allegations of the amended petition are sufficient to show that the "service charge" of $63,050 was taken only for the use of the defendant's money and was therefore a device and contrivance on its part to exact usury.

A petition setting up usury is not subject to general de-

murrer if it furnishes a factual basis upon which the court and jury may by calculation determine whether the amount taken or charged as interest is greater than is lawful. If it does this, it meets the requirements of Code § 81-901, which prescribes the essential allegations of a plea of usury. Measured by this rule, there is no merit in the contention here made that the allegations of the amended petition are insufficient to show a charge of usury.

■ The notes here involved provide for the payment of 10% attorney's fees should they be placed in the hands of an attorney for collection, and it is argued in the brief for the plaintiff in error that a tender of the balance of the principal indebtedness only, less the amounts alleged to have been usurious interest paid, and with no tender of attorneys' fees was clearly inadequate. As a condition precedent to the collection of attorney's fees on any note or other evidence of indebtedness, in addition to the interest specified therein, the holder of the obligation, or his attorney, must after its maturity give the party sought to be held therefor notice in writing of his intention to enforce the attorney-fee provision of the obligation; and if the party sought to be so held pays the obligation in full within 10 days from the receipt of the notice, the agreement to pay attorney's fees shall be void and no court shall enforce the agreement. Code (Ann. Supp.) § 20-506. As to the giving of such required attorney-fee notice, the record in this case is completely silent. A copy of the notice which the defendant was required to publish before it could exercise the power of sale contained in the loan deed is in the record, but it contains no recital indicating that such notice was in fact given. The amended petition alleges that the amount tendered the defendant on October 27, 1955, after foreclosure proceedings had been instituted on October 6, 1955, was the full amount then owing by the plaintiff to the defendant, and for purposes of the demurrer this allegation will be treated as true. Hence, there is no merit in the contention that the general demurrer to the amended petition should have been sustained because the tender was inadequate.

■ A borrower who has executed a deed to secure his debt is entitled to an injunction to prevent a sale of the property under a power of sale in the loan deed when he has either paid the secured debt in full or made a valid continuing tender of the

amount due. *Biggers* v. *Home Building &c. Assn.*, 179 *Ga.* 429 (176 S. E. 38) ; *Georgia Baptist Orphans Home* v. *Moon,* 192 *Ga.* 81 (14 S. E. 2d 590). In this case the amended petition alleges a valid tender of the amount due.

For reasons stated above, the judgment complained of is not erroneous.

*Judgment affirmed. All the Justices concur.*