Mary M. MOORE, Arthur Moore, James Bailey, Robin A. Bailey, Eddie Howard, on behalf of themselves and all other persons similarly situated, Plaintiffs–Appellees,

v.

COMFED SAVINGS BANK, Federal National Mortgage Association, First Federal of Seminole County, First Federal of Walterboro, Government Employees Corporation, Great Life Savings Association, Horizon Financial, F.A., Mid America Federal S & L Association, Permanent Savings Bank Republic Savings & Loan Association, Southeast Mortgage Corporation, FDIC as Receiver for Yankee Bank for Finance & Savings, FSB, Defendants–Appellants.

No. 89–8414.

United States Court of Appeals,
Eleventh Circuit.

Aug. 9, 1990.

Rehearing and Rehearing En Banc Denied
Oct. 4, 1990.

Douglas N. Campbell and Laura E. Stevenson, Booth, Wade & Campbell, Atlanta, Ga., for defendants-appellants.

Thomas S. Richey and G. Patrick Watson, Powell, Goldstein, Frazer and Murphy, Atlanta, Ga., for F.D.I.C., as receiver for Yankee Bank for Finance & Sav., FSB.

William A. Trotter, III, Augusta, Ga., for Comfed Sav. Bank, Permanent Sav. Bank

Republic S & L, Mid Am. Federal S & L Ass'n & SE Mtg. Corp.

David E. Hudson, Hull, Towill, Norman & Barrett, Augusta, Ga., for plaintiffs-appellees.

Before FAY and COX, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal from a denial by the trial court of appellants' motion for summary judgment and their motion to vacate joinder of them as parties defendant.

## I. STATEMENT OF THE CASE

On April 21, 1986, Davis Hogan filed a three count complaint in federal district court. Count I was an individual claim of Davis Hogan under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, against Colonial Savings and Loan Association. Count II asserted a claim under the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (Federal RICO). Count III asserted a claim under the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-1 *et seq.* (Georgia RICO). Count IV, added by amendment, asserted a claim under the TILA for rescission under 15 U.S.C. § 1635 and for penalties under 15 U.S.C. § 1640.

Initially, the complaint was cast as a bilateral class action involving a class of plaintiffs who were Georgia residents and who had borrowed money from Land Bank Equity Corporation (Land Bank) giving mortgages on Georgia real estate as security for such loans, and a class of defendants who had purchased the Land Bank loan paper in the secondary market. The basis for plaintiffs' RICO (and now usury) claims was the allegation that the discount points, fees and charges in connection with the loans were excessive and had rendered the loans usurious. Additional named plaintiffs, including the appellees, were added from time to time, along with the institutions which held their Land Bank loans.

On February 17, 1987, in response to a motion by the plaintiffs seeking a certification of a class of defendant financial institutions, the court entered an order *sua sponte* joining as additional named defendants, all other institutions which held Land Bank loans secured by real property in Georgia, which included the appellants.

On January 19, 1988, seven of the appellants moved to vacate the order joining them as named defendants. On September 15, 1988, these appellants filed certain motions for judgment on the pleadings and for summary judgment. In October 1988, the court held a hearing at which class certification issues as well as the joinder issues were heard. By order of October 17, 1988, the trial court dropped some of the named class representatives, because they had settled their individual claims, then certified a class of plaintiffs with respect to Georgia usury claims arising under O.C.G.A. §§ 7-4-18 and 7-4-2, and denied certification as to all other requested classes.

On March 21, 1989, the trial court entered an order denying appellants' motion for summary judgment, motion to dismiss and motion to vacate joinder and certified that order for interlocutory appeal. This Court granted appellants' motion for interlocutory appeal, and this appeal followed.

## II. STATEMENT OF THE FACTS

### A. *On the Joinder Question*

The loans and promissory notes signed by all the members of the plaintiffs' class originated when they borrowed money from Land Bank Equity Corporation, a Virginia corporation. All of the notes and the settlement papers signed by the borrowers were, in all essential respects, similar to each other. All of them included a large number of discount points, usually in the range of 20 to 38 points, service charges or origination fees, and other charges which, if they were not paid for actual services rendered by or on behalf of the Land Bank Equity Corporation, might result in the collection by Land Bank of interest in an

amount which appellees claimed to be usurious under the applicable Georgia statutes.

Land Bank packaged the loans and sold them to savings and loan institutions around the country. Appellants purchased these loans at the full value of the remaining balance of the principal at the time of the purchase. They received none of the benefits from the discount points and charges made by Land Bank. The trial court ordered Land Bank joined as a defendant, but this order was stayed because Land Bank was then in bankruptcy.

The notes and contracts of each of the named plaintiffs were purchased by one of the several named defendants. None of the named plaintiffs has ever dealt with, or had contact with, any other named defendant with respect to Land Bank loans.

### B. *The Usury Portion of the Class Action*

The loans were evidenced by form notes that had blank spaces for the entry of information concerning the date, secured property address, loan amount, lender's name, annual interest rates, amount of monthly payment, due date for each such payment, place of making payments, amount of late charge, and date of accompanying security deed. Borrowers were also given TILA disclosure statements, of which the named plaintiffs received two different forms which, however, were substantially the same. Each borrower was also given a settlement statement that contained a breakdown of the way in which the principal amount of their loan was to be distributed and for what purpose. If a borrower requested an itemization of the amount financed, they would be provided with a form headed "Amount Financed Itemization" that had spaces for the amount financed, the amount to be given directly to the borrower, the amount to be retained by the lender as discount points, the amount to be paid ostensibly on the borrower's account, and the amounts to be paid to others ostensibly on the borrower's behalf. The pre-paid finance charge was broken down into its component parts consisting of loan discount, service charge, mortgage guarantee insurance, and appraisal fee. The only significant item of these statements was the amount of the discount points which, as indicated above, usually ran between 20 to 40 points.

## III. CONTENTIONS OF THE PARTIES

### A. *Appellants*

(1) Appellants contend that the trial court erred in joining them as defendants in this case because they do not hold the loans of the six named class representatives and had never dealt with these named representatives.

(2) Appellants also contend that the real estate mortgage loans did not violate Georgia usury statutes by virtue of the charging of non-refundable discount points which were agreed to in writing by the borrowers and were authorized by O.C.G.A. § 7–4–2.

### B. *Appellees*

(1) Appellees contend that the trial court properly joined these defendants.

(2) They contend that the discount points which did not actually represent services performed by the lenders violated the Georgia criminal statute § 7–4–18 which could be the basis for a civil action under Georgia authorities.

## IV. DISCUSSION

### A. *Joinder of Parties Defendant*

Over their objection the trial court joined the appellant banks as parties defendant, rather than certifying a defendant class. It is undisputed that but for the four named defendants, Comfed Savings Bank, First Federal Savings and Loan Association of Seminole County, Southeast Mortgage Corporation, and Republic Savings and Loan Association, none of the defendants holds any paper signed by any of the named class plaintiffs. Therefore, all of the remaining appellants complain that they should not have been joined as defendants, and without their joinder, there was no case or controversy between the named plaintiffs and the seven defendants.

There is a strange paucity of appellate court decisions dealing with the precise question with which we are faced here. Appellant relies heavily on the decision by the Court of Appeals for the Ninth Circuit in *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461 (9th Cir.1973). In that case, the Court stated:

> [W]e assert that a plaintiff who has no cause of action against the defendant can not "fairly and adequately protect the interests" of those who do have such causes of action. This is true even though the plaintiff may have suffered an identical injury at the hands of a party other than the defendant and even though his attorney is excellent in every material respect. Obviously this position does not embrace situations in which all injuries are the result of a conspiracy *or concerted schemes* between the defendants at whose hands the class suffered injury. *Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.*

489 F.2d at 466 (emphasis added) (footnotes omitted). The appellees, of course, rely heavily upon the underscored part of the *La Mar* opinion, particularly the last sentence, "Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." They point to further language in *La Mar* in which the Court stated: "It is our view that the class actions in question here are inferior to other 'available methods for the fair and efficient adjudication of the controversy.' F.R.C.P. 23(b)(3)." *Id.* at 467. They point to several statements by the trial court indicating its view that representation of the plaintiffs' class by the named plaintiffs was not inferior to other available methods for the fair and efficient adjudication of the controversy, thus contrasting the case with *La Mar.* The court below stated:

> Other named plaintiffs could be supplied to match with each named defendant but it would be unwieldy to do so. Each plaintiff and the defendants have

connection to each other through Land Bank equity. The case is simpler and more economical with the class of plaintiffs and the named defendants.

The court also stated: "No court would want to have 644 separate lawsuits."

Appellees cite several cases, all decided at the district court level, which they state support their concept of the "juridical link" referred to in *La Mar.* These cases all involved bilateral class action suits but they may well be considered as illustrating the propriety of considering the juridical link in cases such as the one now before us. These cases are *United States v. Trucking Employers, Inc.,* 75 F.R.D. 682 (D.D.C. 1977), *Doss v. Long,* 93 F.R.D. 112 (N.D. Ga.1981), *In re Alexander Grant & Co.,* 110 F.R.D. 528 (S.D.Fla.1986), and *In re Computer Memories Securities Litigation,* 111 F.R.D. 675 (N.D.Cal.1986).

While all of these cases support plaintiffs' view that in the event there is a juridical link, it is appropriate to join as a defendant a party with whom the named class representative did not have a direct contact, each of them presents a situation in which there was either a contractual obligation among all defendants or a state or local statute requiring common action by the defendants.

In addition to the provisions of the class action rule, Rule 23(b), Fed.R.Civ.P., we also consider the rules relating to the joinder of parties either by motion or *sua sponte* by the court.

Rule 19 provides in relevant part as follows:

> *Rule 19 Joinder of Persons Needed for Just Adjudication.*
>
> (a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if
>
> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) *the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's ab-*

*sence may (i) as a practical matter impair or impede the person's ability to protect that interest* or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party....

(Emphasis added).

The trial court based its ruling to join the appellants-defendants as parties on this rule, expressly stating that "complete relief cannot be accorded among those already parties."

Appellees contend in their brief that the joinder was justified under Rule 20 relating to permissive joinder of parties. This rule provides in relevant part as follows:

*Rule 20 Permissive Joinder of Parties*

(a) *Permissive Joinder.* All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, *any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences* and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

(Emphasis added).

Referring first to Rule 19, it seems clear that under the rules of *stare decisis* if these defendants were not joined, a decision in favor of the then present defendants and against the plaintiff class would at least to some extent "impair or impede" a plaintiff's ability to protect his or her legal interest against a defendant. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1212 (11th Cir.1989).[1]

■ However, we need not decide whether joinder was required under Rule 19 because we are satisfied that under Rule 20 dealing with permissive joinder of parties, the trial court had ample basis for joining these defendants. The rule states:

All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of *or arising out of the same transaction, occurrence or series of transactions or occurrences* and if any question of law or fact common to all defendants will arise in the action....

Rule 20(a), Fed.R.Civ.P. (emphasis added).

Here, it is plain from the record that all of these transactions arose out of a series of transactions or occurrences initiated by Land Bank and that all of the claims involved the same question of law and fact.

Appellants contend that rather than arising out of the same transaction or occurrence or series of transactions or occurrences each contract was separate and distinct.

We are of the view that a proper construction of this rule would permit the joinder of all these defendants which acquired their loans from Land Bank, and which for several years continued to pay Land Bank a part of the payments received from the plaintiffs.

We, therefore, conclude that the joinder in this case was proper.

B. *Merits of Usury Claim*

The trial court based its opinion to deny the motion for summary judgment on its determination that the Georgia general usury statute, O.C.G.A. § 7–4–2, did not foreclose plaintiffs'-appellees' action under O.C.G.A. § 7–4–18. In other words, the court held that the definition of interest in

---

**1.** Although the *Chiles* case involved the right to intervene, the standard for intervention as of right is the same as that of required joinder. *See* Federal Rule of Civil Procedure 24(a)(2).

§ 7-4-2, which did not include "[a]mounts paid or contracted to be paid as either an origination fee or discount points, or both, on any loan secured by an interest in real estate," did not define interest as used in the criminal statute § 7-4-18.

The relevant parts of § 7-4-2 for the purpose of the present discussion are:

> (3) *As used in this Code section,* the term "interest" means a charge for the use of money computed over the term of the contract at the rate stated in the contract or precomputed as a stated rate on the scheduled principal balance or computed in any other way or any other form. Principal includes such charges to which the parties may agree under paragraph (1) of subsection (a) of this Code section. *Amounts paid or contracted to be paid as either an origination fee or discount points, or both, on any loan secured by an interest in real estate shall not be considered interest and shall not be taken into consideration in the calculation of interest and shall not be subject to rebate as provided in paragraph (1) of subsection (b) of this Code section.*

O.C.G.A. § 7-4-2(a)(3) (emphasis added).

The relevant parts of § 7-4-18, as amended in 1983, are as follows:

> 7-4-18. *Criminal penalty for excessive interest.*
>
> (a) Any person, company, or corporation who shall *reserve, charge, or take for any loan or advance of money ... any rate of interest greater than 5 percent per month, either directly or indirectly, by way of commission for ad-*
> *vances, discount, exchange, ... or by any contract, contrivance, or device whatsoever shall be guilty of a misdemeanor; ...*
>
> . . . . .
>
> (c) *Nothing contained in Code Section 7-4-2 ... shall be construed to amend or modify the provisions of this Code section.*

(Emphasis added).

(1) *Civil Remedy under Section 7-4-18*

■ The seven appellants, in their brief for this Court, concede that, if there was usury, the borrowers would have a civil action, as contended for by the plaintiffs below. Appellants' brief says:

> If Appellees can prove usury violations under either code section, their only arguable remedy is the forfeiture of all interest and a recovery back of any interest paid within one year prior to the filing of suit. O.C.G.A. § 7-4-10; *Pave Way Construction Co. v. Parrish,* 187 Ga.App. 428, 370 S.E.2d 495 (1988).

Appellants' Br., p. 17. This is the same case relied upon by the appellees before this Court. We, therefore, conclude that there was a civil action available under this section of the Code.[2]

(2) *Were there issues of material fact warranting the trial court's denial of summary judgment?*

Appellees do not contend that they are entitled to a finding that the charges for the use of money made by Land Bank in the promissory notes would exceed the five percent per month permitted under the criminal statute, if measured over the entire life of the loans. These loans varied from 10 to 15 years. This would be true in spite of the outrageous amount of the finance charges.[3]

---

**2.** During the pendency of this case the Georgia Supreme Court has confirmed this view of the Georgia law in *Norris v. Sigler Daisy Corp.,* 260 Ga. 271, 392 S.E.2d 242 (1990). The court stated "... a loan violative of the criminal usury statute is illegal, with the result that the lender forfeits the interest but may collect the principal." 260 Ga. at 272, 392 S.E.2d at 243.

**3.** The following examples of "outrageous" charges are based on the exhibits attached to appellants' brief:

(1) *Moore Loan:* Land Bank withheld the sum of $2,800 called "loan discount points" and $140.00 "service charge." Thus, they received in cash or by payments on their account, only $7,930. The Federal Truth-in-Lending disclosure statement stated: "The cost of your credit as a yearly rate is 29.48 percent."

We consider these annual percentage rates to be "outrageous" in light of the figures shown in the "Statistical Abstract of the U.S. 1989," 109th ed., U.S. Dept. of Commerce, Bureau of the Census, Chart 1256, p. 712. This abstract showed that, as contrasted with the "points" charged here, ranging from 20 to 38, the "initial fees" in the year 1984 averaged 2.54 percent and in 1985 2.5 percent. At the same time, the average interest rate on residential mortgages for 1984 was 12.0 and in 1985 11.1 percent.[4]

Moreover, one of the appellants, Federal Deposit Insurance Corporation as receiver for Yankee Bank for Finance and Savings, at least partially concedes the outrageous nature of these loans. It states in its brief here: "Although these loans are not usurious, the FDIC does not wish to be viewed as advocating or encouraging loans with high discount points or other fees." FDIC then stated that it had "the responsibility to protect the receivership estate against claims which [were] without merit." Appellant's Br., p. 21.

As FDIC states, it is within the province of the state legislature to determine what interest rates may become usurious. The State of Georgia has, by enacting Section 7–4–2(a)(3), apparently left the door wide open for any lender to charge any rate of interest on a loan secured by real estate that may be agreed to by the borrower. It is the appellees' contention that the criminal statute, Section 7–4–18, does, however, put a restriction on the amount of interest chargeable to five percent per month, or 60 percent per annum. We must, therefore, consider the conflicting claims by construing the terms of these two code sections.

(2) *Bailey Loan:* The Bailey loan was for $4,380. Of this amount, $1,280 was retained by Land Bank described as "loan discount" and "service charge." Thus, the only amount paid to the borrowers or for their account was $3,100. The TILA statement described the annual percentage rate for their loan at 27.73 percent.

(3) *Jones Loan:* Ms. Jones signed a note for $19,709.46. Of this amount, Land Bank retained $4,300 as a "discount" and $280 as a "service charge." Thus, the amount paid to Ms. Jones or on her account was $15,129.46. Her TILA statement showed the annual percentage rate to be 25.59 percent.

Plaintiffs claim that these notes may be usurious if the remaining principal balance is prepaid within a short enough time to cause the interest as defined in Section 7–4–18 to exceed five percent a month. They also claim that the same result would occur if there is a default by plaintiffs, followed by a foreclosure of the real property, if the foreclosure sale does not produce sufficient money to pay off the balance of the notes. These claims are based on the provision of Section 7–4–2(a)(3):

> Amounts paid or contracted to be paid as either an origination fee or discount points, or both, on any loan secured by an interest in real estate shall not be considered interest and shall not be taken into consideration in the calculation of interest and *shall not be subject to rebate as provided in paragraph (1) of subsection (b) of this Code section.*

(Emphasis added).

Subsection (b)(1) states:

> Upon acceleration of the maturity of any loan, [or] advance of money, ... upon which interest has been precomputed, unearned interest shall be rebated to the debtor in such amount as would result in the rate of interest earned being no greater than the rate of interest established by the original contract....

Appellants contend that the provisions of § 7–4–2(a)(3) define the meaning of interest in all the Georgia statutes dealing with usury and, therefore, the provision of subsection (a)(3) that precomputed interest should not be rebated precludes appellees' contention in this regard.

(4) *Howard Loan:* The Howard loan was for $4,981. Of this amount, Land Bank deducted $1,200 as "discount" and $60 as "service charge," leaving the amount actually paid to the Howards at $3,721. The TILA statement on the Howard loan showed the annual percentage rate to be 30.07 percent.

4. We take judicial notice of these census figures. F.R.Evid. 201(b). *See Goins v. Allgood,* 391 F.2d 692, 697 (5th Cir.1968); *Mitchell v. Rose,* 570 F.2d 129, 132 n. 2 (6th Cir.1978), *rev'd on other grounds,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979).

(3) *Does Section 7-4-2(a)(3) define interest for the purposes of Section 7-4-18?*

■ Appellants contend that the definition of interest in O.C.G.A. § 7-4-2(a)(3) must be used in construing the language "any rate of interest" contained in Section 7-4-18. Appellants base this contention on the language of Section 7-4-18(b) which states: "This Code section shall not be construed as repealing or impairing the usury laws now existing but shall be construed as being cumulative thereof."

In making such argument, they overlook the language of Section 7-4-18(c) which states: "Nothing contained in Code section 7-4-2 or 7-4-3 shall be construed to amend or modify the provisions of this Code section." Not only does this section contain subsection (c), but it is to be noted that Section 7-4-2 expressly states that the term "interest" was "as used in this Code section," thus excluding its use in other Code sections.

Notwithstanding the opinion of the Department of Banking and Finance of the State of Georgia, in which the deputy banking commissioner opined to the contrary, we are of the opinion that Section 7-4-18 has its own definition of interest. This appears from the language forbidding charging of "any rate of interest greater than five percent per month, *either directly or indirectly, by way of commission for advances, discount, [or] exchange, ... or by any contract, contrivance or device whatsoever....*"

■ By the use of this language, it is clear that the Georgia statute contemplated Section 7-4-18 should be enforced against any person, company or corporation that reserved or charged or took for any loan or advance of money, whether it was done directly or indirectly, by way of commission for advances, by discount, or by any other "device whatsoever." Thus, no matter what the charge or withholding might be called by the parties to the contract, it would be considered interest for the purpose of Section 7-4-18.[5]

It is, therefore, clear that the question whether any such device is a collection of interest or a payment for services rendered presents an issue of fact. We must then determine whether such of these charges as may be found to be interest were sufficient to violate the five percent per month rate permitted to be charged under this criminal code section.

(4) *The Rebate Issue*

■ These notes all contain a provision that if the payment of the indebtedness was accelerated, either voluntarily or on account of default, there would be no rebate of precomputed interest.

Thus, it becomes necessary for the trial court to determine whether these extraordinary charges, as discussed above, were a device by which Land Bank took additional interest for the advance of money to the borrowers. The Georgia courts have consistently held that, except as limited by usury statutes, an agreement by a borrower to pay more than the legal rate of interest in connection with the loan must be carefully analyzed to determine whether it is a charge for services actually rendered or is an attempt to charge a usurious rate of interest. As far back as 1887, the Georgia Supreme Court held:

> The theory that a contract will be usurious or not, according to the kind of paper bag it is put up in, or according to the more or less ingenious phrases made use of in negotiating it, is altogether erroneous. The law intends that a search for usury shall penetrate to the substance.

*Pope v. Marshall,* 78 Ga. 635, 4 S.E. 116, 118 (1887); *see also First Federal Savings & Loan Ass'n v. Norwood Realty Co.,* 212

---

5. The Georgia Supreme Court in *Norris, supra,* also confirmed our view as to the interplay between sections 7-4-2 and 7-4-18. The court there stated: "The disclosure form provided by the lender indicated that the cost of the credit included that fee. Whether it be considered a 'commission for advances,' part of 'other fees,' or a 'contrivance' or 'device,' we find the origination fee to be within the scope of the word 'interest' as it is used in O.C.G.A. § 7-4-18. That being so, it is to be considered interest and not principal for the purpose of deciding whether the loan at issue here violates § 7-4-18." 260 Ga. at 272, 392 S.E.2d at 243.

Ga. 524, 93 S.E.2d 763 (1956). There, the Georgia Supreme Court stated: "[T]his court has uniformly and consistently held that a lender's charge for service, where no service was in fact rendered or to be rendered the borrower, is a charge for the use of the money advanced and is therefore interest." 212 Ga. at 531, 93 S.E.2d at 768 (citing *Pope v. Marshall, supra*).

## V. CONCLUSION

We must bear in mind that the only issue before us is the correctness of the trial court's denial of a motion for summary judgment. The record discloses sufficient facts which might support the plaintiffs' action on the rebate issue. The appellants did not carry the "burden of positively and clearly demonstrating that there [was] no genuine issue of fact." *See National Screen Service Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962). We cannot find here that the trial court abused its discretion in denying the appellants' motion for summary judgment. *See Johnson v. Bryant*, 671 F.2d 1276 (11th Cir.1982).

The judgment is therefore AFFIRMED.