**In re Lannice FRYER, Sr., Debtor.**

**Lannice FRYER, Sr., Plaintiff,**

v.

**EASY MONEY TITLE PAWN, INC., First Defendant,**

**Marion "Bud" Arrington, Second Defendant.**

**Bankruptcy No. 93–10513.
Adv. No. 93–01084A.**

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

June 12, 1995.

15. 799 F.2d 726 (11th Cir.1986).

Scott J. Klosinski, Augusta, GA, for plaintiff.

Leon Larke, Augusta, GA, for defendants.

### *AMENDED ORDER*

JOHN S. DALIS, Bankruptcy Judge.

In his four count complaint, Lannice Fryer, Sr. alleges that the motor vehicle title pawn transaction entered into between Mr. Fryer and Easy Money Title Pawn, Inc. ("Easy Money") violates the Georgia usury statute, O.C.G.A. § 7–4–18, the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("Federal RICO"), the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16–14–1 et seq. ("Georgia RICO"), and the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") and accompanying regulations, Regulation Z, 12 C.F.R. § 226. At trial the parties presented evidence and legal argument, supplemented by post trial briefs regarding Mr. Fryer's usury claim and claim that the contract failed to disclose the finance charge and annual percentage rate in accordance with the TILA.[1] After careful consideration of all the evidence presented and legal authority, I make the following findings of fact and conclusions of law and enter judgment for the plaintiff against defendant Easy Money.

Mr. Fryer entered into the complained of title pawn loan transaction on March 23, 1993 with Easy Money, first defendant, which plaintiff claims is owned and operated by Marion "Bud" Arrington, second defendant. Under the agreement, plaintiff borrowed $700.00 while pledging as security title to his 1986 Pontiac Sunbird automobile. Plaintiff was to repay the loan with interest under one of several options: $223.25 per week if the loan were repaid in 30 days (total to be paid $893.00), $133.40 per week if the loan were repaid in 60 days ($1,068.00), and $103.58 per

---

1. Because no evidence or argument was presented at trial or in any other material presented regarding the remaining State and Federal RICO counts of the complaint, I now consider those counts to have been abandoned.

week if the loan were repaid in 90 days ($1,244.00).

Plaintiff filed for relief under Chapter 13 on April 2, 1993. Easy Money filed a proof of secured claim for $893.00. This proof of claim evidences Easy Money's claim of entitlement to the $700.00 principal plus $193.00 in interest and fees on the pawn transaction. The interest and fee portion of Easy Money's claim gives rise to the dispute in this case. In its prayer for relief, plaintiff seeks actual and treble damages,[2] forfeiture of interest on the pawn transaction, reformation of the contract, cancellation of the security interest granted therein, punitive damages, attorney's fees, expenses and costs of this action together with statutory penalties provided under the TILA.[3]

■ I find that the interest charged in this pawn transaction exceeds that permitted by the Georgia usury statute, O.C.G.A. § 7–4–18, which provides in part:

> Any person, company, or corporation who shall reserve, charge or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than 5% per month, either directly or directly, by way of commission for advances, discount, exchange, or the purchase of salary or wages; by notorial or other fees; or by any contract, contrivance, or device whatsoever shall be guilty of a misdemeanor; provided, however, that regularly licensed pawn brokers, where personal property is taken into their actual physical possession and stored by them, may charge, in addition to said rate of interest, not exceeding 25¢ at the time the property is first taken possession of by them for the storage of said property.

O.C.G.A. § 7–4–18(a).

The defendant argues in its supplemental brief submitted since the trial that this stat-ute does not apply to pawn brokers.[4] I find that contrary to the defendant's contentions, this Code section is applicable to pawn brokers by the clear direct reference to pawn brokers in the statute and the plain language of the statute.

■ The contract in this case provides for a "Pawnshop and Interest Charge" of $175.00 under the 30–day repayment option, plus an $18.00 "Title Fee." These charges plus the principal advanced of $700.00 totals $893.00, the amount of the filed proof of claim. At hearing, testimony was given by Mr. Arrington, who I find based on the unrefuted evidence is not the owner or operator but is simply an employee of Easy Money. According to the contract and the testimony of Mr. Arrington, the $175.00 charge is a 25% per month charge on the pawn transaction. This 25% per month charge is derived from O.C.G.A. § 44–12–131(a)(4)(A), which provides,

> [d]uring the first 90 days of any pawn transaction or extension or continuation of the pawn transaction, a pawn broker may charge for each 30 day period interest and pawnshop charges which together equal no more than 25% of the principal amount advanced, with a minimum charge of up to $10.00 per 30–day period.

The statute does not define interest or pawnshop charges. Mr. Arrington testified that the 25% per month charge is comprised of a 2% interest rate charge and 23% service charge. The services encompassed by this charge include, according to Mr. Arrington, the customer's use of the pawned automobile, the risk to the lender of that continued use, checking and processing the title to the automobile apparently in addition to the itemized $18.00 title fee charged under the contract, verifying insurance on the automobile, and making a log for the Sheriff's department. I find that the charge for these services does

---

2. The complaint prays for actual damages in "an amount proven at trial."

3. In addition to denying the allegations of the complaint, the defendants assert a counterclaim seeking damages, costs of litigation and attorneys fees for filing a frivolous lawsuit. A ruling in plaintiff's favor necessitates a finding that the complaint was not frivolous and judgment on the counterclaim for the plaintiff in the complaint is required.

4. As authority defendant cites a decision by the Fulton County, Georgia Superior Court in *Bekele v. Georgia Cash America*, cited as Case No. E–23710 (Dec. 1994). Unfortunately, the defense has failed to provide me with a copy of this decision.

not constitute pawnshop charges but rather interest.

■ The decision of the Court of Appeals for the Eleventh Circuit in *Moore v. Comfed Savings Bank*, 908 F.2d 834, 842 (11th Cir.1990) interpreted the language of O.C.G.A. § 7–4–18, *supra*, broadly, finding the statute should be enforced against any fee reserved, charged or taken by the lender for the advance of money, distinguishing between a fee charged as collection of interest or as payment for a service rendered. Under *Comfed* I must determine whether the charges imposed by Easy Money are for services rendered or are simply a vehicle for the collection of interest, which according to *Comfed* is a question of fact. *Id.* In doing so, I must harmonize the usury statute, O.C.G.A. § 7–4–18, with O.C.G.A. § 44–12–131's authorization of interest and pawnshop charges of up to 25% per month. Reading the statutes together, a pawnshop is authorized to charge interest of up to 5% per month and also pawnshop charges which when combined with the interest charge do not exceed a 25% ceiling. Because these pawnshop charges are statutorily authorized, they are exempt from qualifying as interest under the usury statute. Pawnshop charge must be defined and identified.

■ There exists no statutory or case authority in Georgia defining pawnshop charges. The Attorney General of Georgia has addressed this issue, stating in an unofficial opinion that a pawnshop charge is a charge for "all services, expenses, costs and losses of every nature whatsoever" incurred by the pawnshop for the retention and storage of a pawn item. 1989 Ga.Op.Atty.Gen. 205, Ga.Op.Atty.Gen. No. U89–28 (1989) (quoting O.C.G.A. § 44–12–131(a) (1989)) [5]. Under this definition, any pawnshop charge imposed must be preceded by the retention and storage of the pawned item, but this definition appears to rely on statutory language which no longer appears in the statute. Notwithstanding such apparent deletion, I can find no friction between this definition of pawnshop charges and the distinction between interest and service charges identified in *Comfed, supra.* Pawnshop charges are expenses actually incurred by the pawn broker in providing a service in connection with the transaction. The 23% service charge imposed here does not reimburse specific expenses actually incurred by Easy Money and hence does not qualify as a pawnshop charge for purposes of O.C.G.A. § 44–12–131(b)'s 25% per month authorization.

■ Easy Money did, in connection with the pawn transaction, verify insurance, make a log entry of the transaction for the Sheriff's Department and verify title to the automobile, but Easy Money failed to demonstrate that it incurred any expense much less expenses totaling exactly 23% of the principal amount of the loan. In fact, the fee for filing a security interest affecting title to a motor vehicle is $5.00. *See* O.C.G.A. § 40–3–27. The fee charged to this borrower in this transaction is $18.00 in addition to the claimed 23% pawnshop charge. Even this fee reflects a charge or reserve by Easy Money of $13.00 above the expense incurred in securing the title lien perfection which would qualify, under *Comfed*, as interest for purposes of usury. Indeed, the 23% service charge is wholly a charge or reserve taken by Easy Money for its involvement in the transaction, and is not a charge to reimburse it for any specific expense incurred by it in providing any service in connection with the transaction. According to Mr. Arrington, the 23% service charge is consistently assessed on every pawn transaction, which demonstrates that this charge is arbitrarily imposed no matter what expenses, if any, are incurred. Moreover, Mr. Arrington's testimo-

---

**5.** O.C.G.A. § 44–12–131(a) (1989) provided:

(a) Any pawnbroker may contract for and receive interest up to the rate of 2 percent per month, with a minimum charge of $5.00, on the principal amount advanced on the pawn transaction and a pawnshop charge for all services, expenses, costs, and losses of every nature whatsoever. The pawnshop charge allowed under this subsection shall not exceed one-fourth of the principal amount, per month, advanced in the pawn transaction. The pawnshop charge shall not be deemed interest for any purpose. Motor vehicles shall be exempt from the limit of one-fourth of the principal amount provision of this subsection and pawnshops may charge a storage fee for motor vehicles not to exceed $30.00 per day.

ny that this charge is imposed for the risk assumed by the lender convinces me that this charge is interest, and interest exceeding 5% per month is prohibited in Georgia.

■ The burden is on the lender to demonstrate that a fee is not interest, so that an unexplained fee should be presumed to represent interest. 1980 Op.Atty.Gen. 48, Ga.Op.Atty.Gen. No. 80–21 (1980); citing *First Federal Savings and Loan Association v. Norwood Realty Company, Inc.*, 212 Ga. 524, 531, 93 S.E.2d 763 (1956). Because of this presumption and because the 23% service charge does not qualify as a pawnshop charge, I find that the 23% charge represents interest on the transaction. What Easy Money has labeled in its contract "interest and pawnshop charges" actually represents interest only. Easy Money has simply used this label to obtain usuriously a 25% per month interest rate on its pawn transactions in violation of O.C.G.A. § 7–4–18, for which there exists a civil remedy and penalty of forfeiture of interest on the illegal contract. *See Comfed, supra,* at 842; *see also Norris v. Sigler Daisy Corp.*, 260 Ga. 271, 392 S.E.2d 242 (1990). Under this case authority, the $175.00 interest and $13.00 excess title registration fee claimed by Easy Money on this contract is the recovery.

■ Mr. Fryer further argues multiple failures by Easy Money to comply with TILA disclosure requirements. Although plaintiff has raised multiple allegations of violation of TILA and Regulation Z and my review of the documentary evidence supports a finding of a complete failure by Easy Money to comply with these requirements, multiple failures to disclose the information required under TILA and Regulation Z in connection with a single account under an "... extension of consumer credit ... entitles the plaintiff to only a single recovery." 15 U.S.C. § 1640(g). Therefore, I will address only one violation.

■ The Truth In Lending Act is applicable to Easy Money under Regulation Z and specifically 12 C.F.R. § 226.1(c)(1):

> In general, this regulation applies to each individual or business that offers or extends credit when four conditions are met: (i) the credit is offered or extended to customers; (ii) the offering or extension of credit is done regularly; (iii) the credit is subject to a finance charge or is payable by a written agreement in more than four installments; and (iv) the credit is primarily for personal, family, or household purposes.

The testimony at hearing clearly established that these four requirements are met, hence Regulation Z is applicable to Easy Money in this transaction. Creditors must strictly comply with TILA's requirements. *Rodash v. AIB Mortgage Co.*, 16 F.3d 1142, 1144 (11th Cir.1994), citing *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1380 (11th Cir. 1984) ("Liability will flow from even minute deviations from requirements [of TILA and Regulation Z].").

■ The TILA and Regulation Z require the disclosure of the "finance charge" prior to the extension of credit, as well as a description within the contract of the term "finance charge."

> ... For each consumer credit transaction other than under an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable:
>
> (3) The "finance charge", not itemized, using that term.
>
> (4) The finance charge expressed as an "annual percentage rate", using that term. This shall not be required if the amount financed does not exceed $75 and the finance charge does not exceed $5, or if the amount financed exceeds $75 and the finance charge does not exceed $7.50....
>
> (8) Descriptive explanations of the terms "amount financed", "finance charge", "annual percentage rate", "total of payments", and "total sale price" as specified by the Board. The descriptive explanation of "total sale price" shall include reference to the amount of the downpayment.

15 U.S.C. § 1638(a).

The term "finance charge" is defined under Regulation Z as "the sum of all charges, payable directly or indirectly by the person to whom credit is extended, and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." *See* 15 U.S.C. § 1605(a); 12 C.F.R.

§ 226.4(a). The finance charge is not identified or disclosed in the contract.

> For each transaction, the creditor shall disclose the following information as applicable: ...
>
> (d) Finance charge. The "finance charge", *using that term*, and a brief description such as "the dollar amount the credit will cost you".

12 C.F.R. § 226.18(d) (emphasis added). Mr. Arrington's testimony established that the 25% per month fee includes 2% interest and 23% service charge, which qualifies as a finance charge under Regulation Z:

> The finance charge includes the following types of charges, ...:
>
> (2) Service, transaction, activity, and carrying charges, ....

12 C.F.R. § 226.4(b)(2). The finance charge is not disclosed but is only ambiguously expressed as 25% per month "interest and pawnshop charge." Additionally, the contract does not disclose as a part of the finance charge the $13.00 charged over the cost of recording Easy Money's title lien. There is a complete failure to disclose the finance charge on this transaction, and the ambiguous reference to "interest and pawnshop charges" serves not to disclose but to disguise the finance charge imposed on this contract.

██ The TILA imposes a statutory penalty for violations of its requirements as of twice the amount of the finance charge but not less than $100.00 or more than $1,000.00, and costs of the action together with reasonable attorneys' fees as determined by the court. 15 U.S.C. § 1640(a)(1)–(3).

> The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit....

12 C.F.R. § 226.4(a).

In this case the finance charge includes the interest and pawnshop charges assessed of $175.00, plus the excess charge for perfecting Easy Money's security interest in the plaintiff's automobile of $13.00, totalling $188.00. At the close of trial, I stated to plaintiff's counsel that in the event that plaintiff was successful on the complaint and I determine that an award of attorney's fees was appropriate, I would afford him an opportunity to submit a fee application inclusive of time records.

It is therefore ORDERED that judgment be entered as follows:

1) for the plaintiff Lannice Fryer, Sr. against the defendant Easy Money Title Pawn, Inc. finding a violation of the Georgia usury statute O.C.G.A. § 7–4–18 requiring the forfeiture of all interest under the contract totalling $188.00 reducing the amount of allowed claim of Easy Money in the underlying Chapter 13 case to $705.00 to be paid without interest;

2) for the plaintiff Lannice Fryer, Sr. against the defendant Easy Money Title Pawn, Inc. finding a violation of the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq., and accompanying Regulation Z C.F.R. § 226 et seq. assessing a statutory penalty of twice the amount of the finance charge equalling $376.00 together with reasonable attorney's fees to be later determined;

3) that plaintiff's counsel, shall submit a fee application in this adversary proceeding accompanied by supporting documentation and served on opposing counsel within twenty (20) days of the date of the entry of this order with response by opposing counsel within twenty (20) days of service;

4) for the defendant Marion "Bud" Arrington; and

5) for the plaintiff Lannice Fryer, Sr. against Easy Money Title Pawn, Inc. and Marion "Bud" Arrington on the defendants' counterclaim.