[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
04/29/99
THOMAS K. KAHN
CLERK

————————————

No. 98-8405

————————————

D. C. Docket No. 1:97-CV-3012-TWT

OHUNENE O. LAWAL GLINTON, et al,

Plaintiffs-Appellants,

versus

AND R, INC., a Georgia Corporation, et al,

Defendants-Appellees.

————————————

No. 98-8406

————————————

D. C. Docket No. 1:97-3013-CV-TWT

MICHAEL DARBY, and those persons similarly situated
with Mr. Darby,

Plaintiff-Appellant,

versus

COBB CENTER PAWN AND JEWELRY BROKERS, INC.,
a Georgia corporation, N.Y. DIAMOND CORPORATION, et al,

Defendants-Appellees.

————————————

No. 98-8872

_____

D. C. Docket No. 1:97-CV-3015-TWT

SUSAN WALKER, and all persons similarly situated with Walker,

Plaintiff-Appellant,

versus

MIKE HORTON; CASH EXPRESS, INC., et al,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(April 29, 1999)**

Before HULL and MARCUS, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

> CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR
> THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA
> PURSUANT TO O.C.G.A. § 15-2-9 (1994).

> TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

This case involves an unanswered question of Georgia law that is determinative of this

appeal. We therefore certify questions for resolution by the Georgia Supreme Court.

In this consolidated action, three plaintiffs appeal the dismissal of their suits alleging that

transactions they entered with pawnbrokers violated Georgia's criminal usury statute, O.C.G.A. §

7-14-18, and the Racketeer Influence and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 *et*

*seq*. The facts are undisputed.

### 1. Plaintiff Susan Walker

Between December 1996 and July 1997, Walker received cash in a series of title pawn transactions with Cash Express of Newnan, Inc. in exchange for pledging to Cash Express the title to her 1985 Cadillac Eldorado. The rate of interest on the title loans was 20% per month. Walker alleges she has paid approximately $1,700.00 in interest on approximately $1,100.00 in principal received since January 1997. Cash Express maintains that as of July 13, 1997, Walker was indebted in the amount of $675.00 and is accruing interest charges at a rate of 216% per annum.

### 2. Plaintiff Michael Darby

In December 1996, defendant Cobb Center Pawn loaned $750.00 to Darby. To secure the loan, Cobb Center took possession of the title to Darby's truck which was valued at approximately $8,000.00. In May of 1997, Cobb Center again loaned money to the plaintiff and used the same vehicle title as collateral. The total of interest and charges on both loans was 25 percent per month or 300 percent annually. While the plaintiff paid off the initial loan in a timely fashion, he defaulted on the second loan, and Cobb Center took possession of the truck pursuant to their agreement.

### 3. Plaintiff Ohunene Glinton

Glinton alleged that on or about June 17, 1997, And R, Inc., d/b/a Atlanta Title Loans loaned her $2,000.00 at an interest rate charge of 25% per month. In her amended complaint, Glinton added another plaintiff, Phyllis Guthrie, who asserts that she engaged in an identical loan transaction with another pawnshop known as Instant Cash Loans, Inc., d/b/a Atlanta Title Loans, which loaned Guthrie $4,000 in exchange for title to her Mercury Cougar as collateral. The plaintiffs alleged that Guthrie was also charged an interest rate charge of 25 percent per month or 300 percent annually.

Plaintiffs filed complaints against numerous pawn shop entities, their owners and operators as well as other defendants including the Pawn Brokers Association of Georgia alleging the transactions violated Georgia's criminal usury statute, O.C.G.A. § 7-4-18(a), and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(b).[1] Plaintiffs contended that defendants' conduct violated § 1962(b) in that they knowingly collected unlawful debts with interest rates in excess of the rates allowed by the Georgia usury statute. Plaintiffs asserted that defendants conspired in violation of 18 U.S.C. § 1962(d) in the unlawful collection of those debts, and sought treble damages in accordance with 18 U.S.C. § 1964 as well as a return of an amount equal to the difference between the value of the vehicle or money taken by the defendants and the principal amount of the loan. Plaintiffs also sought class certification.

Defendants moved to dismiss the complaints contending that the transactions complied with Georgia's pawnbroker statute, O.C.G.A. § 44-12-130 *et seq*. Defendants argued that the usury statute and the pawnbroker statute are in conflict and that the pawnbroker statute is controlling because it was enacted more recently and specifically applies to the subject transactions. Because they complied with the pawnbroker statute with respect to the interest charged to the plaintiffs, defendants contended that plaintiffs' claims failed to state a claim for relief.

Plaintiffs argued that the pawnbroker statute and the usury statute should be read together to impose a maximum rate of interest of five percent per month. Plaintiffs argued that the charge of 25 percent interest in connection with each transaction violated the usury statute's prohibition against charging more than five percent interest per month on a loan transaction.

---

[1] Darby also alleged defendants' repossession of his vehicle amounted to conversion because of the alleged violation of the usury statute, and Walker additionally alleged violations of the Truth in Lending Act, TILA, 15 U.S.C. § 1601 *et seq*, claims that appear to have been abandoned on appeal.

The district court, concluding that the two statutes conflict and cannot be harmonized and that the pawnbroker statute governs the subject transactions, granted defendants' motions and dismissed the cases.

On appeal, plaintiffs contend the district court erred by holding that the two statutes cannot be harmonized and read to prohibit interest rates greater than 5% per month on pawn transactions.

The Georgia usury statute provides in pertinent part that:

Any person, company, or corporation who shall reserve, charge or take for any loan or advance of money, or forbearance to enforce the collection of any sum or money, any rate of interest greater than 5 percent per month, either directly or indirectly, by way of commission for advances, discount, exchange, or the purchase of salary or wages; by notarial or other fees; or by any contract, contrivance, or device whatsoever shall be guilty of a misdemeanor; provided, however, that regularly licensed pawnbrokers, where personal property is taken into their actual physical possession and stored by them, may charge, in addition to said rate of interest, not exceeding 25 cents at the time the property is first taken possession of by them for the storage of said property.

O.C.G.A. § 7-4-18(a)(1997).

Georgia's pawnbroker statute provides in relevant part that:

(4)(A) During the first 90 days of any pawn transaction or extension or continuation of the pawn transaction, a pawnbroker may charge for each 30-day period interest and pawnshop charges which together equal no more than 25 percent of the principal amount advanced, with a minimum charge of up to $10.00 per 30-day period.

(B) On any pawn transaction which is continued or extended beyond 90 days, a pawnbroker may charge for each 30 day period interest and pawnshop charges which together equal no more than 12.5 percent of the principal amount advanced, with a minimum charge of up to $5.00 per 30 day period.

O.C.G.A. § 44-12-131(a)(4)(A), (B)(Supp. 1998).

Under O.C.G.A. § 44-12-130(2)(Supp. 1998), a "pawnbroker" is "any person engaged in whole or in part in the business of lending money on the security of pledged goods." A "pawn transaction" is defined, in pertinent part, as any loan on the security of pledged goods, which include

5

tangible personal property such as a motor vehicle certificate of title. O.C.G.A. § 44-12-130(3),(5)(Supp. 1998).

Neither the Georgia Supreme Court nor the Georgia Court of Appeals has examined the apparent conflict between these two statutes, and the Georgia superior court cases interpreting these provisions reach contrary conclusions.

In *Bekele v. Georgia Cash America, Inc.*, Civil Action No. E-23710 (Superior Court of Fulton County, Dec.6, 1994), the court held that the two statutes were in direct conflict, and that the pawnbroker statute was controlling because it was more recently enacted and specifically applied to pawnbrokers. By contrast, in *Blakeney v. Jerry's Pawn Shop, Inc.*, Civil Action No. 96-A-7660-4 (Superior Court of Gwinnett County, Aug. 27, 1997), and *McWhorter v. Pawn Your Auto, Inc.*, Civil Action No. 93-A-0754-3 (Superior Court of Gwinnett County, Feb. 11, 1994), the court held that the statutes should be read together to authorize pawnbrokers to charge up to 5% per month in interest plus an additional 20% per month during the first 90 days (and 7.5% per month thereafter) in "pawnshop charges," which must be expenses actually incurred by the pawnbroker in servicing the pawn transaction.

In the only reported decision addressing this issue, the latter interpretation was adopted by a bankruptcy court in *Fryer v. Easy Money Title Pawn, Inc.*, 183 B.R. 322, *recon. denied*, 183 B.R. 654 (Bankr S.D. Ga. 1995). In addition to the consolidated cases on appeal here, a recent Northern District of Georgia case also agreed with the holding in *Bekele* and rejected *Fryer*, determining that the statutes were in conflict, and that the pawnbroker statute controlled in pawn transactions. *See Precious Maines v. Davis*, Civil Action No. 1:98-CV-1376-MHZ (N.D. Ga. Nov. 20, 1998).

There is no dispute as to whether the subject transactions are "pawn transactions." Nor do plaintiffs allege defendants failed to comply with the pawnbroker statute. Plaintiffs' case hinges on

6

whether these two facially contradictory statutes can be read together to impose a 5% cap on the rate of interest that can be charged in pawn transactions. Because this appeal depends solely on resolution of this question of Georgia law, we certify the following questions to the Supreme Court of Georgia:

> CAN THE STATUTORY SCHEME REGULATING PAWNBROKERS, § 44-12-130-138 BE READ HARMONIOUSLY WITH THE CRIMINAL USURY STATUTE, O.C.G.A. § 7-14-18, SO THAT BOTH APPLY TO "PAWN TRANSACTIONS" AS DEFINED IN O.C.G.A. § 44-12-130(3), OR ARE SUCH TRANSACTIONS MEANT TO BE GOVERNED EXCLUSIVELY BY O.C.G.A. § 44-12-130-138.
>
> IS THE PERMISSIBLE RATE OF INTEREST AND FEES CHARGED IN "PAWN TRANSACTIONS" AS DEFINED IN O.C.G.A. § 44-12-130(3) GOVERNED SOLELY BY O.C.G.A. § 44-12-131, OR DOES THE CRIMINAL USURY STATUTE, O.C.G.A. § 7-14-18, APPLY TO MODIFY ALLOWABLE CHARGES SO THAT THE INTEREST CHARGED IN THESE TRANSACTIONS VIOLATES GEORGIA LAW.

The phrasing used in this certified question should not restrict the Supreme Court's consideration of the problem posed by the case. This extends to the Supreme Court's restatement of the issues and the manner in which the answer is given. In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the court.

QUESTIONS CERTIFIED.

7